NEPONSIT HOLDING CORPORATION, Respondent, *v.* PERCY I. ANSORGE, Appellant.

Second Department, January 29, 1926.

Vendor and purchaser — action by vendor to compel specific performance — contract made by officers of vendor corporation provided that it was subject to approval of stockholders required by Stock Corporation Law, § 20 — contract provided that if vendor could not give title or was unable to procure necessary consents of stockholders then vendee would be entitled to return of down payments and expenses — provision relieving vendor from obligation specifically to perform under certain contingencies does not deprive it of equitable remedy against vendee — contract was not sale — corporations — consent of stockholders under Stock Corporation Law, § 20, given after contract made is sufficient.

A vendor corporation may have a land contract entered into by its officers, subject to consent of the stockholders required by section 20 of the Stock Corporation Law, specifically enforced after said consents are obtained, notwithstanding a provision in the contract that if the vendor is unable to deliver a deed conveying good and marketable title or is unable to obtain the consent of the stockholders, the vendee shall be entitled to the return of any payments made together with reasonable expenses for the examination of title.

The fact that the contract relieves the vendor from the obligation to perform specifically does not defeat its right to compel the vendee to perform the contract.

A contract executed by the officers of a corporation for the sale of real property of the corporation, subject to consents by the stockholders, as required by section 20 of the Stock Corporation Law, is not a sale of the land, and it is not necessary that the stockholders consent to the sale before the contract is executed, but a contract so executed which is subsequently consented to by the required number of stockholders is valid and enforcible.

APPEAL by the defendant, Percy I. Ansorge, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Queens on the 23d day of December, 1925, denying his motion to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Meier Steinbrink* [*Samuel Davis* and *Israel B. Leibson* with him on the brief], for the appellant.

*E. J. Dimock* [*Alfred Gregory* with him on the brief], for the respondent.

MANNING, J.  The appeal is from an order made at Special Term, Kings county, on December 22, 1925, with direction that it be entered in Queens county. The order denied defendant's motion to dismiss the plaintiff's complaint upon the ground that it did not state facts sufficient to constitute a cause of action.

The action was instituted in Queens county, the plaintiff cor-

poration, vendor, seeking to compel the defendant, vendee, specifically to perform his contract for the purchase of real property situate at Neponsit Beach, West Rockaway, Queens county, N. Y. The contract itself is printed in the record. The purchase price is stated as $181,000, whereof the sum of $30,000 was paid upon the signing of the contract, $90,000 was agreed to be paid by the giving of a purchase-money mortgage, and the balance, $61,000, was to be paid in cash upon the delivery of the deed. The contract contains these provisions: " It is understood and agreed that this sale is subject to the consent and approval of the holders of record of two-thirds of the outstanding shares of the capital stock of the seller, entitled to vote thereon, as provided in Section 20 of the Stock Corporation Law of the State of New York, and the seller hereby agrees to cause a Special Meeting of the stockholders of the seller to be called for a date prior to October 5, 1925 [the date of closing], pursuant to said section, for the purpose of considering and acting upon this sale.

" If the seller shall be unable to deliver, or cause to be delivered, a deed or deeds conveying a good and marketable title to said premises, subject as aforesaid, or is unable to obtain the consent and approval of the stockholders of the corporation as hereinabove set forth, any payments made under this agreement shall be refunded to the purchaser, together with reasonable expenses incurred for examination of title not exceeding the usual charges of title insurance companies, and all other obligations of the parties hereto under this agreement shall thereupon cease."

The complaint sets out the making of the contract and the payment of the $30,000. It then alleges: " That thereafter and on or about the 25th day of August, 1925, the holders of record of more than two-thirds of the outstanding shares of the capital stock of plaintiff, entitled to vote thereon, duly consented to and approved the sale to be effected by said agreement, as provided in Section 20 of the Stock Corporation Law of the State of New York, at a Special Meeting of the stockholders of plaintiff duly called for that date, pursuant to said Section, for the purpose of considering and acting upon said sale, all pursuant to and in accordance with the terms of said agreement."

It is then alleged, in paragraph VII, that thereafter, and at the time and place fixed for the delivery of the deed, the defendant " repudiated any and all obligation to perform said agreement." Then follow allegations of tender by the plaintiff and of performance by it of all the requirements on its part to be performed. The demand is for an order decreeing specific performance on defendant's part.

The motion to dismiss the complaint was heard at Special Term, and the learned justice, who denied it, rendered the following memorandum opinion: " Motion denied. The rule in *Wadick* v. *Mace,* 191 N. Y. 1, is not applicable here (*Epstein* v. *Gluckin,* 233 N. Y. 490). This contract does not give the vendor an absolute right to breach its terms upon certain conditions. It obligates the vendor to convey, provided it has title and the consent of the stockholders has been obtained. In the complaint it is alleged that the title is good and the consent has been obtained. It has not been uncommon for equity to decree specific performance where the consent of a third person to a sale was necessary if such consent was obtained before suit (*Catholic Foreign M. S.* v. *Oussani,* 215 N. Y. 1). Moreover, to give section 20, Stock Corporation Law, the construction urged by defendant would mean stockholders could not ratify the act of the corporate officer, and therefore that a good bargain could not be made by an officer of a corporation tentatively. Such officer, if the construction sought is correct, would be obliged to run the risk of losing the bargain by first going to the necessary stockholders for consent."

The objections raised to the sufficiency of the complaint are two-fold, namely:

" (1) That the contract which is the basis of the complaint is unenforceable in equity; it lacks mutuality of remedy in that it contains a provision that in the event the vendor is unable to deliver a marketable title, for various reasons specified, the purchaser shall be entitled only to a refund of the purchase price and the expenses of searching the title, and that ' all other obligations of the parties hereto under this agreement shall thereupon cease.'

" (2) That the contract is invalid in that it purports to sell the property of the plaintiff corporation, under section 20 of the Stock Corporation Law, without first obtaining the consent of the holders of at least two-thirds of the voting stock, in accordance with said section 20, and that the *subsequent* attempted ratification by two-thirds of the voting stock alleged in the complaint, is ineffectual, because without statutory authority, and in the absence of statutory authority unanimous consent is required."

The appellant's first objection to the sufficiency of the complaint is crystallized in his first point as follows: " Where a contract, otherwise enforceable by a decree for specific performance, contains a provision releasing one of the parties from the obligations of specific performance upon certain events, such provision takes the contract out of the domain of a court of equity, and leaves both parties to their remedies at law."

In support of his contention the appellant cites *Wadick* v. *Mace*

(*supra*). In that case the contract contained this provision: " It is further understood and agreed by and between the parties hereto, that in the event of a breach of the within Contract by the party of the second part, and the said party of the second part being unable to fulfill the terms and conditions of the within Contract, then this Contract shall be null and void, and the deposit * * * paid upon the signing of the within Contract shall be retained by the party of the first part hereto, as and for liquidated damages and in full satisfaction thereof, and no suit or action whether for specific performance or damages shall be maintained by the party of the first part against the party of the second part."

While in that case the Court of Appeals held that specific performance must be denied because of lack of mutuality of remedy in that there was an express provision that no suit for specific performance should be maintained by the vendor, the court was influenced by the further important fact that the minds of the parties did not meet as to the specific location and boundaries of the property to be conveyed.

*Wadick* v. *Mace* has been distinguished and limited in *Epstein* v. *Gluckin* (233 N. Y. 490). In that case defendant Rose Gluckin made a contract to sell real property to one Weinstein and one Joblin. The vendees assigned their interest to the plaintiff. The vendor refused to convey and a suit for specific performance followed. The Court of Appeals held that the assignee, although he had not assumed the burdens of the contract, was nevertheless entitled to specific performance. As to *Wadick* v. *Mace* the court said: " We hold, then, that specific performance was available to assignee as to assignor. Nothing to the contrary was intended by our decisions in *Wadick* v. *Mace* (191 N. Y. 1) and *Levin* v. *Dietz* (194 N. Y. 376). Later cases have made it clear that the decisions there made will be closely confined, and not extended by analogy. If there ever was a rule that mutuality of remedy existing, not merely at the time of the decree, but at the time of the formation of the contract, is a condition of equitable relief, it has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule to-day."

Among the authorities cited in support of the foregoing are *Catholic F. M. Society* v. *Oussani* (215 N. Y. 1, 8), *Trustees of Hamilton College* v. *Roberts* (223 id. 56) and Dean Stone's article entitled " The ' Mutuality ' Rule in New York " (16 Columbia Law Review, 443). The opinion continues: " What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression, either to plaintiff or to defendant * * *. Mutuality of remedy is

important in so far only as its presence is essential to the attainment of that end."

Particularly applicable to the case at bar is the statement in 23 Harvard Law Review (p. 295): " The only mutuality in fact necessary is that at the time of the decree the defendant be given or assured performance by the plaintiff or its equivalent, regardless of his lack of reciprocal remedy at the time of the bargain."

Dean Stone's article in 16 Columbia Law Review (p. 451), after discussing *Wadick* v. *Mace,* states: " A consequence of this decision if its reasoning be followed is that parties to a contract over which equity would otherwise have jurisdiction may not, however obvious their intention and however explicit their language, reserve the right to specific performance to one party and waive it for the other. A rule which thus does violence to the intention of the parties to a contract without some controlling reason resting in positive law or morals, should not commend itself to ' a court of conscience.' "

Concerning *Catholic F. M. Society* v. *Oussani,* also cited in *Epstein* v. *Gluckin,* Dean Stone's article states: " A recent decision of the Court of Appeals has shown a disposition of that court not to adhere strictly to the rule that the obligation of the contract must be mutual in order to entitle either party to specific performance. In *Catholic, etc., Society* v. *Oussani* an officer of the plaintiff-corporation, so far as appeared, without authority, had entered into a contract for the purchase of land. The contract contained a provision that unless a road running through the property proposed to be sold should be closed within one week, the plaintiff ' should be in no way obliged.' The court held that upon proper proof of the ratification of the contract the plaintiff would be entitled to specific performance of his contract, saying: ' There may be an exception here to the general rule that mutuality must be judged as of the date of the contract, but if so, it is as well established as the rule itself.' "

This line of reasoning culminated in *Epstein* v. *Gluckin.* It is clear, therefore, in so far as the question of mutuality is concerned, that the plaintiff was entitled to have the contract specifically performed.

The appellant's second point is: " A contract to sell the property of a corporation is not valid unless consented to by the holders of two-thirds of the voting stock *before* such sale, in accordance with section 20 of the Stock Corporation Law, or unless thereafter ratified by the *unanimous* consent of the stockholders."

This involves the construction of paragraph VI of the contract, already quoted, in the light of section 20 of the Stock Corporation

Law. It also raises the precise question whether a contract for the sale of real property is in fact a sale. Section 20 reads:

" § 20. Voluntary sale of franchise and property. A stock corporation, except a railroad corporation and except as otherwise provided by law, with the consent of the holders of record of two-thirds of its outstanding shares entitled to vote thereon may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof; * * * Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called pursuant to section forty-five."

The appellant relies upon *Wegman* v. *Levinson Shoe Mfg. Co.* (195 N. Y. Supp. 535), decided at Special Term, Monroe county, in 1922. It involved the question of the consent of stockholders to a sale of the corporate property under what was then section 16 of the Stock Corporation Law, but which since then has been changed to section 20. The court said: "There is no authority for making an agreement by the officers in advance of the consent of the stockholders. A proposal which if legally accepted becomes binding, is the contemplated procedure. The stockholders are entitled to have the proposed sale submitted to them without prior commitments or complications which may forestall independent action. If there is to be a sale of the company, it must be made in accordance with the statute, so that no undue or unlawful advantage may be taken of minority stockholders."

The general rule, as succinctly stated in *Eldridge* v. *Kuehl* (27 Iowa, 160, 173), is that anything short of passing the title is not a sale but an agreement to sell. It is said in *Marts* v. *Cumberland Ins. Co.* (44 N. J. L. 478, 481) that the word "sale" imports an actual transfer of title, and although it may be used as a mere contract to sell, yet in strictness it denotes an actual transmission of property. And in *Robinson* v. *Hirschfelder* (59 Ala. 503) it is said that an agreement to sell does not become a sale if any terms in which the seller must co-operate, or which imposes a duty or liability upon him, remain to be performed. An old New York case (*Edwards* v. *Farmers' Fire Ins. & L. Co.*, 21 Wend. 467) distinguishes between "contract" and "sale" so minutely that I am tempted to quote at length: "That here was a strict sale, cannot be pretended, within either the legal or common definition of the term. It was a contract *to sell at another day*, on conditions yet to be performed. It is claimed to derive its operation, and we have just seen does operate under the 8th section of the statute of frauds, which relates to contracts respecting real estate. That section, I think, itself draws the distinction, as I believe it will be found to exist in all those cases where it is sought to be announced by a legal accuracy of

expression. The words are, ' every *contract for the sale of any lands, &c.,*' shall be void unless in writing, subscribed by the party ' *by whom the sale is to be made.*' In short, this contract * * * was for *a sale to be made;* and that sale was to be made after the company had acquired title. * * * The operative words in a deed of bargain and sale, such as would have satisfied the covenant in question, and which is our ordinary method of passing title, are — have granted bargained *sold, &c.* * * * In short, a sale passes the property, and is called a contract executed; it operates *in rem*, conferring a right to take possession or bring ejectment or trover. A contract to sell, such as the one before us, is executory, and operates *in personam* only. Though one has agreed to sell his farm unconditionally, it must still in legal propriety be considered as unsold. The agreement creates but *jus ad rem;* a sale, to be complete, must carry the *jus in re.* The former is a step towards the act of sale; the latter is the act itself."

In *Tamsen* v. *Schaefer* (108 N. Y. 604, 609) the Court of Appeals say: " Plaintiff's contract with Schaefer was not a conveyance *in presenti* to him of the land. It was a mere contract for a conveyance to him at a future time. It was an agreement to sell and not a sale. * * * The complaint is not framed upon the theory that there was an actual transfer of the title to the plaintiff, but upon the theory that he simply held the contract, and the action was to recover damages for the breach of that contract or to compel specific performance thereof. Whether an instrument shall be treated as a conveyance of land, or as an executory contract for a conveyance depends upon the intention of the parties as gathered from all the language used, read in the light of all the circumstances; and here clearly there was no intention that the contract should operate as a conveyance."

In *Catholic F. M. Society* v. *Oussani* (215 N. Y. 1), cited in this opinion in connection with the discussion of appellant's first point, defendant Oussani, the owner of a tract of land in Westchester county, undertook to sell it to the plaintiff, a membership corporation. By section 13 of the Membership Corporations Law, no purchase, sale, mortgage or lease of real property shall be made unless ordered by a concurring vote of at least two-thirds of the corporation's directors, except that when the whole number of directors is not less than twenty-one, the vote of the majority of the whole number shall suffice. Upon the proposed sale the Catholic Foreign Mission Society was represented by its president. A memorandum of the agreement was put in writing and dated July 12, 1912. The president, merely as such, had no power to

sign the contract. It was urged, however, that such power was conferred by a resolution passed by the directors on June 29, 1912. That resolution, however, merely gave the president " authority to sign and execute all documents." The Court of Appeals held that this did not mean that he could sign any contract he pleased; that it meant that when contracts had been duly authorized he had the power to sign them. Because of this the court held that there was no ratification. The court said: " They never ratified the contract collectively and as a board. They never ratified it, if that be possible, * * * singly and as individuals. There is no evidence that two-thirds of the directors, or even one director, ever heard of the contract. All that the president did, either in making tender of the price or in prosecuting this action, was done of his own motion. By that time the seller had already repudiated the contract. Whether there could be an effective ratification *after* notice of Oussani's withdrawal may be doubted. * * * It is everywhere conceded, however, that ratification, if possible at all *after* notice of withdrawal, must be announced within a reasonable time." (Italics mine.) A study of the court's reasoning in that case leads to the conclusion that if there had been a ratification by the directors before Oussani's repudiation, the court would have held the contract to be enforcible. The analogy between that case and the case at bar is palpable.

But the appellant claims that a construction of subdivisions 2 and 4 of section 240 of the Real Property Law warrants the holding that a contract to sell is synonymous with the sale itself. Those subdivisions read:

" 2. The term ' conveyance,' as used in this article, includes every instrument, in writing, except a will, by which any estate or interest in real property is created, transferred, assigned or surrendered."

" 4. The terms ' estate ' and ' interest in real property ' include every such estate and interest, freehold or chattel, legal or equitable, present or future, vested or contingent."

The appellant's argument proceeds along these lines: (1) In the case of a contract for the sale of real property the vendee becomes the equitable owner of the property, the interest of the vendee, in the event of his death, being treated as real estate and descending to his heirs or devisees. (2) That in *Sewell* v. *Underhill* (127 App. Div. 92) this court decided that where, between the date of the contract and the delivery of the deed, the premises were destroyed by fire, the loss must fall on the buyer because the " contract of purchase and sale " conveyed the equitable title to him. From this the appellant concludes: " Indeed, it is only because

a contract for the sale of real property is a sale and conveyance of the equitable title to the property that a court of equity lends its aid to enforce specific performance." Of course the contract transfers the equitable title; but that does not necessarily mean that it is the sale. The contract transfers the equitable title; the sale transfers absolute title.

By the terms of the contract in the case before us, four requirements had to be complied with by the seller before it could pass title: (1) The termination of a lease by giving ninety days' notice and paying the lessor $1,000; (2) the calling of a special meeting of the stockholders; (3) the consent, at such meeting, of the holders of record of two-thirds of the outstanding shares of stock, and (4) the ability of the corporation to give a marketable title. Until these requirements had been complied with the corporation did not obligate itself to part with its property. If an agreement to sell is not a sale if any of the terms in which the seller must co-operate, or which impose a duty or liability upon him, remain to be performed, then certainly in this case the contract was not a sale.

I think the conclusion reached by the learned justice at Special Term on the law and the facts was correct, and I suggest an affirmance of the order appealed from, with ten dollars costs and disbursements.

KELLY, P. J., RICH, KAPPER and LAZANSKY, JJ., concur.

Order denying defendant's motion for dismissal of the complaint on the ground of insufficiency affirmed, with ten dollars costs and disbursements.