## In the Matter of EDWARD H. O'HARA.

Supreme Court, Onondaga County, August 18, 1928.

*George W. O'Brien*, for the petitioner.

*Thomas W. Dixon*, for the respondent.

CHENEY, J.   The petitioner is the owner of 450 shares of the preferred stock of the Great Northern Warehouses, Inc., out of a total issue of 3,958 shares of preferred stock and 225 shares of the common stock of the same corporation.

The Great Northern Warehouses, Inc., is a corporation engaged in

the business of conducting a storage warehouse in the city of Syracuse. The holders of a large majority of stock conceived the idea that it would be advisable to consolidate this corporation with the King Storage Warehouse, Inc., another corporation engaged in the same line of business in Syracuse, and to effectuate that purpose the directors of the two corporations entered into a contract which provided for the formation of a new corporation, to be known as the King-Great Northern Warehousing Corporation, and a sale by each of the existing corporations to the new corporation of all their property and franchises in exchange for certain shares of stock of the new corporation. This contract contained this clause: " It is understood and agreed that this. contract is made conditional upon each party hereto securing from its stockholders, within 30 days from the date hereof, the necessary consents and complying with all statutory requirements to validate the same, and that this agreement may be canceled by either party in case owners of more than 5 per cent. of the preferred capital stock of said first party (Great Northern Company) object to this contract and the proposed sale therein set forth, and proceed under section 21 of the Stock Corporation Law to have their stock appraised."

For the purpose of carrying out the terms of the contract, the Great Northern Company called a meeting of its stockholders in order to obtain such consent as required by section 20 of the Stock Corporation Law of 1923. At that meeting all of the stockholders present, except the petitioner, being the holders of more than two-thirds of the stock issued and outstanding, voted in favor of a resolution consenting to the sale and ratifying the action of the directors in making the contract. The resolution of approval and consent contained this provision: " That the approval of the stockholders to the above-mentioned contract, and the consent to the sale and transfer above referred to, is given upon the express condition that, if owners of more than 5 per cent. of the preferred capital stock of this company object to the proposed contract and sale and proceed, under section 21 of the Stock Corporation Law, to have their stock appraised, then and in that event it shall be left to the sole discretion of the board of directors as to whether or not said contract shall be canceled and rescinded, and the sale and transfer hereby authorized and consented to be carried out and completed."

The petitioner at such stockholders' meeting voted against the proposed sale, and objected to the sale, and demanded payment of his shares, and within sixty days after such meeting served the notice of this motion for the appointment of commissioners to appraise the value of his stock as provided by section 21 of the Stock Corporation Law of 1923 (as amd. by Laws of 1924, chap.

441). Thereupon the board of directors of the King Storage Warehouse Company, one of the parties to said contract, passed a resolution canceling the contract and withdrawing its consent thereto, and served notice of such action on the Great Northern Company, the other party thereto. Upon the receipt of said notice, the directors of the Great Northern Company also passed a resolution canceling and rescinding the contract and the sale and transfer therein set forth, and withdrawing the consent of the stockholders to such contract and sale, and declared the same null and void and of no further effect. No sale of the property and franchises of the Great Northern Company has been made, and no valid contract therefor is now existing.

The question here is whether the petitioner is entitled to have his stock appraised and he be paid the appraisal value thereof, notwithstanding the fact that there has been no sale of the corporation property and franchises, merely because there has been an attempt to make a sale and to procure the consent of the stockholders in the statutory way, and a contract entered into and consent obtained, both made conditional upon the fact that no proceedings for appraisal of the stock of a dissenting stockholder be instituted.

It must be admitted that the situation presented here is within the letter of section 21 of the Stock Corporation Law, if standing alone; but this section must be construed in connection with section 20 of the same law. These two sections both relate to the same matter, and together form a method by which authority is granted for the sale of the property and franchises of one corporation to another without the unanimous consent of the stockholders, as had been the rule previous to the introduction of this provision in our statutes, as evidenced by a long line of decisions culminating in *People* v. *Ballard* (134 N. Y. 269, 272). The history of this legislation is very fully given in *Matter of Timmis* (200 N. Y. 177) and the reason for its adoption was expressed in this language: " The discussion of the subject in the various opinions suggested two evils: (1) The injustice to the bulk of the stockholders from want of power in a corporation to sell its business or an essential part thereof to another corporation organized for the purpose, frequently from its own membership, on terms deemed advantageous by the holders of a large majority of the stock. (2) The injustice to minority stockholders of requiring them to abandon, change or limit their business if the majority should have the power to direct such a sale. An incidental evil was the power of a dissenting stockholder to compel the majority to buy him out on his own terms in order to secure unanimous consent with no one left to question the transaction. * * * This legislation was designed to meet the evils pointed

out by the courts by enabling a majority of two-thirds to sell if they deemed it was the best policy, and at the same time to protect the minority, if they regarded the sale as opposed to their interests."

It would appear that, construing the two sections together, the right of the dissenting stockholder to require the purchase of his stock is dependent upon the sale to which he objects actually being consummated. I have not been able to find any case which directly so holds, but the Appellate Division of the Third Department, in commenting upon the decision in the *Timmis Case* (*supra*), construes that case as holding: " That the section must not be construed, however broad the language used, as having another meaning than the Legislature intended; that, until a stockholder had been in some manner prejudiced by a sale of corporate property, he would not be a party in interest entitled to an appraisal of his stock." (*Matter of Silberkraus*, 224 App. Div. 268.)

It is certainly true that in every reported case, where the right was recognized and enforced, the sale had actually been made. (*Matter of Drosnes*, 187 App. Div. 425; *Matter of Erlanger*, 206 id. 148; *Matter of Timmis*, 200 N. Y. 177; see statement in appellant's brief in record on appeal.) And the right has been refused in cases not involving a sale in the strict reading of the word, a lease, although consent to the execution thereof had been given in a meeting called for that purpose, as required by section 20. (*Matter of Knaisch*, 203 App. Div. 725.)

The fact that this statute was very crudely drawn, and that the courts must give it a liberal interpretation, to the end of accomplishing its undoubted purpose, was very strongly asserted in *Matter of Bickerton* v. *New York Theatre Co.* (232 N. Y. 1). In that case the court said: " In attempting the proper construction of the legislative enactment, the nature and purpose of the proceeding for which it was providing are considerations of importance as calculated to throw light upon the meaning of the provisions which were adopted."

I am of the opinion that it was the intention of the Legislature in the passage of this statute to give a dissenting stockholder the right to receive payment for his stock only in a case where an actual sale of the property and franchises of the corporation, or a substantial part thereof, is made.

In this case no sale has been made, nor is any contract for a sale outstanding to which the consent of the stockholders can attach. The contract for the sale was made upon a condition that it might be canceled upon the happening of a certain event. The event happened, and both parties to the contract have rescinded and canceled it. The contract for the sale is not a sale. (*Neponsit Holding Corporation* v. *Ansorge*, 215 App. Div. 371.) The consent

itself is a conditional consent, and is tied in with the contract in such a way as to make the sale which is consented to the sale provided by the contract. The condition mentioned in the consent is the same as that mentioned in the contract, and the consent falls with the contract.

I am convinced that the petitioner has not made a case entitling him to the order asked for. It is true that the order appointing appraisers is but a preliminary step in the special proceeding, and the petitioner would not be entitled to payment for his stock until the report of the appraisers is confirmed and an order for payment made. (*Matter of Bickerton* v. *New York Theatre Co.*, 232 N. Y. 1.) But it would be senseless to conduct the proceeding up to the point of the motion for confirmation, when it was clear in the beginning that the petitioner was not entitled to the final relief.

The motion is, therefore, denied. As the petitioner was regular when the notice of motion was served, and would have lost his remedy by default if he had failed to proceed when he did, the denial is without costs.