In the Matter of HOLT S. McKINNEY et al., Appellants. BUSH TERMINAL BUILDINGS COMPANY, Respondent.

Argued October 19, 1953; decided January 14, 1954.

*Henry Cohen* and *Holt S. McKinney*, in person, for Holt S. McKinney and another, appellants. I. Appellants' petitions for appraisal were presented in time. (*Anderson* v. *International Minerals & Chemical Corp.*, 295 N. Y. 343; *Matter of Thomas*, 259 App. Div. 843; *Standard Brewing Co.* v. *Peachey*, 202 Misc. 279; *Matter of Isaac* [*Bohack Realty Corp.*], 198

Misc. 85.) II. The plan of recapitalization gave rise to a right of appraisal as to both common and preferred stock. (*Matter of Silberkraus,* 250 N. Y. 242; *Matter of Kinney,* 279 N. Y. 423.)

*Vermont Hatch, John M. Johnston* and *Malcolm J. Edgerton, Jr.,* for respondent. I. Petitioners are not entitled to an appraisal and payment of the value of their stock pursuant to section 21 of the Stock Corporation Law because of their failure to assert any such right within the time limited therefor by statute. (*Matter of Marcus [Macy & Co.],* 297 N. Y. 38; *Matter of O'Hara,* 133 Misc. 184; *Matter of Thomas,* 259 App. Div. 843; *Matter of Millard* v. *Moore Co.,* 221 App. Div. 113, 246 N. Y. 546; *Standard Brewing Co.* v. *Peachy,* 202 Misc. 279; *Matter of Isaac [Bohack Realty Corp.],* 198 Misc. 85.) II. No provision of the plan of recapitalization gave rise to a right of appraisal in petitioners either as to their preferred or common stock. (*Matter of Gerstle-Rhein S. A. [Merry Hull, Inc.],* 194 Misc. 795; *Matter of Kinney,* 279 N. Y. 423.)

Desmond, J. Petitioners-appellants McKinney are the owners of sizable blocks of both the cumulative preferred stock and the common stock of respondent Bush Terminal Buildings Company. They object to a plan of recapitalization adopted by respondent, which, as briefly described, contemplates the split-up of old $5 par value common stock into fifty shares of new ten-cent par value common, and a (voluntary) exchange of each share of existing $100 preferred stock, plus accumulated dividends, for $100 principal amount of new mortgage bonds plus one share of new $50 par value preferred plus one share of the new ten-cent common stock. This proceeding was brought by the McKinneys for an appraisal of their stock, pursuant to section 21 of the Stock Corporation Law, and was opposed by the corporation, which claimed not only that the proceeding had not been brought within the time limited by subdivision 3 of section 21, but, also, that the proposed plan of recapitalization was not such as to give objecting stockholders a right of appraisal under subdivision 11 of section 38 of the Stock Corporation Law. At Special Term the application was granted and an appraiser appointed. On appeal by the corporation to the Appellate Division, First Department, there was, however, a unanimous reversal on the law with an opinion in which

it was held that the application was not made in time. Accordingly, the question as to whether the proposed recapitalization was of such a character as to give objectants a right to an appraisal was not reached by the Appellate Division. Since it is our conclusion that notice of application to the Supreme Court for an appraisal was not served on time, under the plain language of the statute, we do not reach the other question, that is, as to whether any of the provisions of the plan of recapitalization gave rise to a right, in dissenting stockholders like petitioners, to an appraisal as to either their preferred or their common stock.

Section 21 of the Stock Corporation Law contains a precise time table for preliminary objections by nonconsenting stockholders, for demands by them for payment, and for bringing a proceeding for appraisal if those demands for payment are not met. These petitioners made their original objections in time, but did not bring this proceeding in time, as we will show. Since petitioners failed to comply with those mandatory time requirements of the statute, they are put to the necessity of arguing here that the time limitations of the statute are not to be. literally applied when, as here, the approval vote of stockholders is conditioned on a further action by directors, or that, to such a case, the time limitations of the statute are not applicable at all.

Article 4 of the Stock Corporation Law, applicable to various kinds of amendments of certificates of incorporation, including changes in capital stock, is specifically made subject to section 21 of the same law, and section 21 says, in its subdivision 1, that if a corporation's stockholders have taken action for such a change in capitalization and if any stockholder has made timely objection and demand for payment, the corporation within ten days after the last day on which a demand for payment might have been made, shall mail to the objecting stockholder an offer of payment for his stock. Here, the petitioners made due objection and demand but the corporation did not respond with an offer to pay. That brings up subdivision 3 of section 21 which says that, if the corporation fails to make an offer to buy the stock, the nonassenting stockholder may petition the Supreme Court to determine the value of the stock, but — and here we come to the time question before us

on this appeal — such petition, on five days' notice, shall be made returnable in court on the fiftieth day after the last day the demand of the objecting stockholder for payment might have been made, or on the first succeeding day permitted by the practice of the court. Our first question, then, is as to the date from which that fifty days is to be computed.

Subdivision 11 of section 38, which is part of article 4 (*supra*), applicable to changes in capitalization, requires that, when at least twenty days' notice of a stockholders' meeting on a plan of recapitalization has been given, as was done here, objecting stockholders, in order to have a right to appraisal and payment, must object to the plan and demand payment before the vote authorizing such action. The stockholders' meeting in this case was held on November 26, 1951, and these petitioners filed their objection and demand on November 6th and 7th, respectively, thus putting themselves in a position to move in court for appraisal if the corporation should not make a satisfactory offer of payment. This corporation did not make any such offer of payment. In that situation, under subdivision 3 of section 21 (*supra*), petitioners' only further right as to appraisal was conditioned on their bringing a proceeding in Supreme Court returnable on the fiftieth day after the last day on which their demand for payment might have been made. Since this stockholders' meeting voted in favor of this plan on November 26, 1951, as aforesaid, that was the last day for petitioners to demand payment, and the fiftieth day after November 26, 1951, was January 15, 1952. However, this proceeding was not begun until these petitioners, on May 1, 1952, served their petition for appraisal returnable May 6, 1952, nearly five months after the fiftieth day. We, in *Matter of Marcus (Macy & Co.)* (297 N. Y. 38, 44), reminded the Bar that "the Legislature has clearly prescribed the conditions under which a nonconsenting stockholder may have his stock evaluated and enforce payment therefor." Similarly, in *Anderson* v. *International Minerals & Chemical Corp.* (295 N. Y. 343, 350), we pointed out that the Stock Corporation Law prescribes the sole method and the sole conditions for appraisal and payment.

How then do petitioners seek to avoid the effect of their delay? They point out that the notice of such meeting of stock-

holders called for a vote on a proposed plan of recapitalization but provided, also, as a part of the proposed plan, that the approval by stockholders was to contain and be accompanied by an authorization by the stockholders to the directors '' in their discretion, to declare the Plan operative ''. The stockholders did so vote at their meeting — that is, they approved the proposed plan, authorized the amendment of the certificate of incorporation and the execution of a new mortgage, accordingly, but left it to the discretion of the directors to put the plan into operation. The directors determined, later, that the plan should become operative upon receipt of consents for exchange of stock from the holders of at least 80% of the preferred stock but could be declared operative by the directors on receipt of such lesser percentage as the board of directors might determine. In other words, although the stockholders approved and authorized the plan as required by law, they reserved to the directors a power of final action to put the plan into effect. Petitioners argue that such a conditional authorization by stockholders is not within the contemplation of the statutes, but we see nothing in any of the statutes forbidding the addition of such a reservation. As pointed out by the Appellate Division, there are a number of reasons why such a reservation might be appropriate, including the pendency of proceedings before the Federal Securities and Exchange Commission for registration of the new securities, a proceeding which was required here, and which registration with the commission did not become effective until February 14, 1952, or nearly three months after the meeting of stockholders. There seem to be no decisions in the appellate courts of this State on this precise question, but there are a number of cases in the lower courts holding valid stockholders' authorizations which were made subject to various conditions, such as subject to the number of objectors (*Matter of O'Hara*, 133 Misc. 184), or subject to opinion of counsel (*Standard Brewing Co.* v. *Peachey*, 202 Misc. 279). In *Matter of Isaac* (*Bohack Realty Corp.*) (198 Misc. 85), the situation was much like the one we have here, since there the stockholders' vote of approval required the affirmative vote of the board of directors to consummate the plan, and objecting stockholders who did not bring their proceeding in time argued, as petitioners do here

at one point, that the time would not be set running until the directors should approve the plan. This contention was rejected in the *Isaac* case, under the authority of *Matter of Marcus (Macy & Co.)* (*supra*), which says that the precise language of section 21 cannot be altered by the courts.

Petitioners here go so far as to say that the language of paragraph (d) of subdivision 11 of section 38, as to " the vote authorizing such action " should be taken to mean, in a case like this, the subsequent vote of directors putting the plan into final effect. The difficulty is, though, that a reading of the whole of sections 21 and 38 shows that, throughout those statutes, the " vote " referred to is a vote of stockholders, and the whole purpose and sense of both statutes is that the various changes described require, for validity, the affirmative vote of an appropriate number of stockholders. The fact that this plan required further action by directors cannot change the statutes which condition the right to appraisal on the objectors doing certain things in timely relation to the action taken by the stockholders.

A further argument of petitioners is from sections 36 and 37 of the Stock Corporation Law which state the requirements for the certificate of amendment which ultimately effects the change in capitalization, and require that, in a case like this, the certificate be subscribed by certain corporate officers. Petitioners argue, therefore, that the statutory phrase: " vote authorizing such action ", which fixes the time for demand for payment by an objecting stockholder and thus fixes the beginning of the fifty days, must refer here to a vote not of the stockholders but of the directors, since only a directors' vote can put this plan finally in effect. The answer to this is, as already stated, that sections 21 and 38 cannot be read as referring to any voting except voting by stockholders. The record shows that the resolution passed at the stockholders' meeting of this corporation contains an authorization to the " proper officers of the Company * * * to execute and file a Certificate of Amendment ". In other words, when appellants tell us that what the statute provides for is an authorization by stockholders to officers to execute a certificate of amendment and other necessary papers, they are met by the answer that this is exactly what this stockholders' meeting did authorize,

although the same resolution left it to the discretion of the directors as to when (and whether) to declare the plan operative.

What appellants are really complaining of is this: that, if these statutes be construed so as to require the bringing of this proceeding within fifty days of the stockholders' meeting even though the day of putting the plan into effect and the question of whether or not to put it into effect have been left to the directors, then, say appellants, dissenting stockholders will be required to bring a proceeding for appraisal at a time when they do not know whether the plan will ever actually go into effect. But their plight is not as bad as it sounds. Any such recapitalization plan can always be abandoned by the corporation, it would seem (see *Matter of Millard,* 246 N. Y. 546, where a proposed sale was dropped after appraisal proceedings were under way), in which event objecting stockholders will have been put to the trouble and expense of a useless appraisal proceeding. The statute itself recognizes this possibility, in subdivision 6 of section 21, which starts out by providing that, after a stockholder has objected and demanded payment, his right to receive dividends, and all his other stockholder's rights cease. Then the next sentence of subdivision 6 says, among other things, that if the action to which the objectant objects be abandoned or rescinded, the status of the objecting stockholder shall be restored and he shall then receive any dividends to which he would have been entitled had he not demanded payment and appraisal. A question comes to mind, of course, as to what will or would happen, in a situation like the present one, if the appraisal proceeding was timely brought, but the corporate action, made subject to final decision by the directors, was still in abeyance at the time the proceeding for appraisal came on to be heard at Special Term. The answer is, we assume, that, in such event, the proceeding for appraisal would have to be adjourned to await the action of directors, and, if the corporate action should finally be abandoned, subdivision 6 of section 21 (*supra*), would come into play. That is the best available answer, and, if some better protection is to be afforded dissenting stockholders, the Legislature will have to amend the statute. In any event, a nonassenting stockholder who fails to come into court in time can hardly excuse that delay by a showing that the statute which

he failed to follow might not have worked out to complete justice for him, had he obeyed its time limitations.

The dissenting opinion in this court takes the position that the corporate action here was defective and ineffective since, it is said, the stockholders could not validly leave to the directors, in their discretion, the ultimate decision as to amending the certificate or not. But there is nothing in the corporation statutes of this State outlawing such an arrangement. No one doubts that, under article 4 (*supra*), it is the stockholders who must authorize these corporate charter and stock changes, but here such authorization was obtained, in due form. And, when that consent had been given by the owners of the required percentage of stock, the statutory rules for their protection had been obeyed, the statutory intent was satisfied, and those who withheld their assent had their clearly defined remedy. The Legislature has nowhere prohibited — nor would it have any reason for prohibiting — voluntary action by the majority of the stockholders leaving it to the directors, who manage the corporation in other respects (General Corporation Law, § 27) to decide when and if the plan consented to, should go into effect. In most instances, like the present one, the plan itself is initiated by the directors, and the stockholders are merely consenting to a proposal by the directors. It may be that, in some dark and devious manner hinted at but not explained, this device of leaving to the directors the putting into effect of the plan may be used to cheat minority stockholders, but we see no sign here of such chicane, but of routine corporate management only.

The order should be affirmed, with costs.

Fuld, J. (dissenting). This case presents another instance of the anomalies and contradictions that arise when the corporation laws are used in a manner which the legislature neither sanctioned nor contemplated. (Cf. *Eisenberg v. Central Zone Property Corp.*, 306 N. Y. 58.)

On October 17, 1951, petitioners — the owners of 980 shares of 7% Cumulative Preferred Stock (with dividends in arrears) and 202 shares of Common Stock of respondent Bush Terminal Buildings Company — were notified of a special meeting of respondent to be held on November 26 to vote upon a so-called

"Plan of Recapitalization," involving, among other things, an amendment of the certificate of incorporation and a reduction of the corporation's capital. The notice "told" the stockholders that there was no right of appraisal. However, undeterred by such advice, petitioners sent in their proxies against the proposals and demanded appraisal and payment of their shares.[1]

At this meeting of November 26, the plan was approved by a large majority — but with the proviso "that the Board of Directors, *in its discretion*, be and hereby is authorized to declare the Plan of Recapitalization operative and, in the event that the Plan be declared operative, to take or cause to be taken all such other action as it may deem necessary or advisable to carry the same into effect". (Emphasis supplied.) Petitioners promptly sent their stock certificates to the corporation for notation thereon of their demand for payment, but the certificates were returned, unmarked, on the ground that there was no right of appraisal.

The record is silent as to what, if anything, the directors did between November 26, 1951, the date of the meeting, and February 15, 1952, when they sent a letter to the preferred stockholders asking them to consent to exchange their stock for the new securities provided for by the plan. In that letter, the directors stated that they would declare the plan effective, if holders of 80% of the preferred stock agreed to the exchange — but they reserved the right to declare the plan operative with a smaller number of consents. Almost two months later, on April 7, 1952, the directors finally voted to make the plan effective, although, it is to be noted, the specified percentage of consents had not been obtained. Learning of this action within a few days, petitioners again sent their certificates to the corporation for appropriate notation, and again it was refused. Thereupon, on May 1, 1952, pursuant to section 21

1. Since the court does not reach the question, I would merely note that, in my judgment, the proposed plan, by providing for a reduction of capital, effects such "a material alteration of the preferential rights of the old preferred" as to entitle dissenting holders of that preferred stock to an appraisal and payment of their shares under paragraph (a) of subdivision 11 of section 38 of the Stock Corporation Law. (*Matter of Kinney,* 279 N. Y. 423, 431.)

of the Stock Corporation Law, they filed the present petition for appraisal of their stock in the Supreme Court.

No one reading the record before us can fail to be impressed with petitioners' diligence in declaring and maintaining their position as dissenting stockholders. Nevertheless, the court is holding that their petition was not timely, because the legislature has prescribed a '' precise time table '' under which petitioners were required to file their petition for appraisal by January 15, 1952 — almost three months before it could possibly be known whether there was to be a plan or a charter amendment.

In my view, this is, at best, to insist on *strictissimum ius* with respect to the stockholder, while sanctioning noncompliance with the statute on the part of the corporation.

Section 38 of the Stock Corporation Law provides that objecting stockholders, in order to have a right of appraisal and payment, must object to the action and demand payment '' prior to the vote authorizing such action '' (subd. 11, par. [d]), and section 21 requires that they must file their petition for appraisal '' on the fiftieth day after the last day on which [such] demand * * * might have been made '' (subd. 3).

The crucial question, therefore, is, when was the vote had which authorized the action. Respondent argues that the stockholders' vote of November 26 was the vote and action specified by the statute. Petitioners argue that where, as here, the stockholders merely authorized the directors to act in their discretion, the vote and authorization were not complete until the directors had exercised their discretion in favor of the action. If, as the court is deciding, petitioners are not permitted, for the purpose of their appraisal proceeding, to split the vote and authorization prescribed by the statute into two parts, it certainly follows that the corporation is likewise without warrant in endeavoring to split the vote. Consequently, the requirements for amendment of the corporate charter were never complied with and no proper corporate action ever voted.

The issue here involved is more basic than the right of these petitioners to the appraisal which they seek. The stockholders' vote is the care and concern of the entire statutory scheme for charter amendment and change.

Section 27 of the General Corporation Law provides that the general affairs of a corporation are to be managed by its board of directors. However, when it came to fundamental changes, the legislature reverted to the original source of authority, the stockholders. An amendment of the charter, such as was here contemplated, can only be effected by filing a certificate which, by section 37 of the Stock Corporation Law, must be "subscribed and acknowledged by the president or a vice-president and the secretary or an assistant secretary" (subd. 1, par. [c]), who must make and annex an affidavit stating that "they have been authorized to execute and file such certificate by the votes * * * of the holders of record of a majority [in certain cases; in others, two-thirds] of the outstanding shares entitled to vote at the stockholders' meeting * * * with relation to the proceedings provided for in the certificate" (subd. 1, par. [c], cl. [1]).

It is evident that the legislature deliberately excluded the directors, as such, from any voice in the determination of these questions, and that the action of the officers is entirely ministerial. The specified authority — and it is the only one needed or permitted — is action by the stockholders authorizing the officers to execute and file the certificate. That action may be, as usually it is, taken at a meeting, but it may also be taken without one (§ 37, subd. 1, par. [B]). In either case, definitive action by the stockholders — without the intervention of the board of directors — is the essence of the entire statutory scheme. Unless this requirement is complied with, the assenting stockholder cannot know what he is authorizing; unless there is such compliance, the dissenting stockholder cannot be protected.

The resolution adopted at the stockholders' meeting of November 26, 1951, did not comply with the statute's demands. Instead of authorizing the officers named in section 37 to subscribe and acknowledge a certificate of amendment, as the statute required, it authorized the board of directors simply to proceed or not "in its discretion." Even if the statute were not as clear as it is in directing what must be done, such a resolution would violate the maxim, "*Delegatus non potest delegare.*" The statute neither sanctions nor leaves room for blank checks.

The requirement of definitive stockholder action is emphasized, and the deficiencies of the resolution highlighted, when the provisions designed for the benefit of dissenting stockholders are considered. As the court points out, the legislature has prescribed a time table for action when there are dissenters. That time table is intelligible and appropriate, however, only when proper stockholder action is taken, and, as this very case demonstrates, it becomes involved in contradictions and absurdities, if a corporation is permitted to do what was here done.

I observe, in the first place, that the entire right of appraisal is made dependent on an actual change in the charter. "If", declares section 38, "*the certificate*" effects certain changes, then, the stockholder not in favor of such action may object, in which case either he or the corporation is entitled to have the stock appraised and payment made for it. It is too far-fetched, I suggest, to say that the legislature intended that petitions for appraisal should be filed and prosecuted even before it could possibly be known whether there would ever be a certificate of amendment. It would be just as reasonable, I am impelled to interpolate, to require one to commence an action for breach of contract before the contract is violated or to institute a suit for divorce on the possibility that grounds therefor will later eventuate.

On the argument before us, counsel for respondent was asked, what would happen if the petition came on for hearing before the directors exercised their discretion, and his answer was that it would have to be adjourned. If that be so, the question arises, where is the authority for refusing to permit the prosecution of "the right * * * to have such stock appraised and paid for"? And for how long? In the case before us, it would have been only a period of months, but it might just as well have been years. I know of no other instance, in the entire range of the law, of such an anomalous proceeding, and I perceive no basis for attributing such a design to the legislature.

Indeed, by reason of other requirements of the statute's time table, such a proceeding is more than an anomaly; it may actually become a potent instrument for oppression. The stockholders' vote terminates the dissenter's rights as a stockholder and limits his claim solely to the ultimate award, and he may

not thereafter resume his status as a stockholder without the consent of the corporation. Within twenty days after the vote, the stockholder must send his certificate to the corporation for appropriate notation, so that the rights of innocent third persons may not intervene. This means, not only that his interest becomes, in effect, nonsalable, but that he is deprived of current income that he would otherwise have received in the form of dividends. These may appear to be the necessary or appropriate concomitants of a charter amendment and a vested right to payment.[2] But to impose these disabilities except as corollary to a right to payment would appear to be so harsh and purposeless as to require the very plainest language of the legislature.

Such consequences as these, I venture, account for the form of the resolution here adopted. Those in control of the corporation were seeking a means to force the preferred stockholders to accept the " voluntary " plan, while at the same time depriving them of the right to appraisal which the legislature intended them to have as an alternative. (Cf. 1938 Report of Securities Exchange Commission on Protective and Reorganizations Committees, pt. VII, § III, p. 109 et seq.) If that sort of vote and action is permissible, then — as was said, though in an entirely different context (Garner v. Los Angeles Bd., 341 U. S. 716, 728, per FRANKFURTER, J.) — " All but the hardiest may well hesitate " to voice their dissent. In truth, under the circumstances present in this case, the right to appraisal, intended to protect dissenting stockholders, ceases to be a right and becomes a trap. " All of these corporation statutes ", we wrote in Small v. Sullivan (245 N. Y. 343, 354), " have their legitimate purposes, but they cannot be used as a blind ".

Every legitimate corporate objective could have been accomplished without sanctioning the sort of conditional and qualified resolution here used. Respondent, however, contends that there are practical reasons why such a resolution should be

2. The legislature has attempted to mitigate them by requiring the corporation to make an offer. Under the resolution adopted in this case, however, the corporation could not make an offer, because it had no authority to proceed until the directors had exercised their discretion.

permitted. Even if the statute were not clear, these contentions would offer little aid to construction.

It is urged, for example, that the corporation should know how much money will be required for dissenters before it is committed to proceed. That very argument, however, was the basis and reason for the amendment made in 1934 (L. 1934, ch. 764, amdg. Stock Corporation Law, § 38), whereby the demand for payment by the dissenter must be made " prior to " the vote instead of after it is recorded. (See, e.g., 1934 Bulletins on Committee on State Legislation of Assn. of Bar of City of N. Y., pp. 637–640.)

And the federal laws relating to securities and their registration have even less relevance. Contrary to the implication contained in the court's opinion (p. 212), there was no requirement of registration of the new securities with the Securities Exchange Commission, or of a proceeding before that body, as a condition precedent to amendment of the charter. The registration was necessary, only to permit the later solicitation of the preferred stockholders to exchange their shares (U. S. Code, tit. 15, § 77e). Consequently, the stockholders were entirely free, were fully privileged, to adopt an unconditional and unqualified resolution authorizing the filing of an amending certificate. However, to have proceeded in that way would have given a dissenting stockholder an indisputable right to appraisal and payment, and would have defeated the very purpose that the conditional resolution was intended to secure.

We are told, also, that the legislature must have contemplated such a conditional resolution, such an *in nubibus* approval, as the corporation here employed, because subdivision 6 of section 21 provides that the status of the dissenting stockholder as a stockholder in the corporation must be restored, " if the action to the taking of which objection was made shall be abandoned or rescinded ". These words, if given their natural and legitimate scope, do not justify the kind of cat-and-mouse game with the stockholders which the corporation has here attempted. Section 21 is applicable to a variety of situations in addition to amendments under section 35. For example, a sale of the corporate assets under section 20 is coupled with a right to appraisal and payment under section

21. Indeed, it is in connection with sales and consolidations that the right to appraisal originated in this state (L. 1893, ch. 638). In the case of either a sale or a consolidation, it is evident that the action by the stockholders may fail of its object. Even if a binding contract has been entered into, the other contracting party may fail to obtain the requisite authorization or may default. It may, accordingly, be necessary to abandon the action, in which event the reason for the appraisal will, of course, have ceased — well illustrated, I believe, by *Matter of O'Hara* (133 Misc. 184), one of the very cases cited by the court (opinion, p. 212). We need not dwell on the application of the provision concerning rescission, for here no action was taken by the stockholders' meeting and, therefore, there was nothing to rescind.

The applicable principles stated, I turn to the controversy raised by petitioners' demand for appraisal and payment.

Had the " corporate action " taken on November 26, 1951, been proper, the filing of the petition would have been, as respondent asserts, too late. But that action was, I have sought to show, without statutory warrant and, accordingly, the proposed plan was *de jure* defective. However, it has been carried out *de facto*, and has, so far as appears, been acquiesced in by all the stockholders except petitioners. If the latter had brought an action for an injunction to prevent the consummation of the plan — as they could have done — a court of equity, on a balancing of conveniences, might well have denied relief, upon condition that they be paid the value of their preferred shares. In a mistaken, but not illogical, belief that the corporate action was completed by the vote of the directors, petitioners have prosecuted their demand for payment and have, in all other respects, scrupulously complied with the requirements of the statute. Under the circumstances, the present appraisal proceeding should continue. And I would reach the same conclusion, even if I were to agree with the view of the majority that the stockholders' vote may be made contingent upon subsequent approval by the directors. On that assumption, I see no basis for holding that the corporate action is completed, or that the statutory time table becomes operative, prior to the decision of the directors.

The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to Special Term so that it may proceed to direct appraisal and payment of petitioners' preferred stock.

LEWIS, Ch. J., DYE and VAN VOORHIS, JJ., concur with DESMOND, J.; FULD, J., dissents in opinion in which CONWAY and FROESSEL, JJ., concur.

Order affirmed.