NEW JERSEY AND HUDSON RIVER RAILWAY COMPANY, PLAINTIFF IN ERROR, v. AMERICAN ELECTRICAL WORKS, DEFENDANT IN ERROR.

Submitted July 10, 1911—Decided November 20, 1911.

Proceedings for a consolidation of traction companies having been taken pursuant to section 18, &c., of the Traction act of 1893, under which said companies were organized (*Pamph. L.* 1893. *p.* 302; *Gen. Stat., p.* 3235), and a dissenting stockholder having applied to the Circuit Court of the county pursuant to section 23 for the appointment of commissioners to appraise the market value of his stock &c.—*Held,* that section 23 provides for a proceeding that is voluntary as between the parties, and at the same time highly beneficial; that the section ought to be liberally construed in aid of the proposed remedy; and that the procedure should not be hampered by technical conditions that are not expressed in the language of the statute.

On error to the Supreme Court, whose opinion is reported in 52 *Vroom* 34.

For the plaintiff in error, *Wendell J. Wright.*

For the defendant in error, *Arthur F. Egner* and *McCarter & English.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. Prior to the consolidation presently to be mentioned, the Hudson River Traction Company and the New Jersey and Hudson River Railway and Ferry Com-

pany were respectively corporations organized under the so-called "Traction act" of 1893, being chapter 172 of the laws of that year, and found in *Pamph. L.* 1893, *p.* 302; *Gen. Stat., p.* 3235. That act, by its eighteenth and succeeding sections, authorizes a consolidation of the stock, property, franchises and railways of corporations created under the act, and prescribes the steps to be taken in order to bring about such consolidation. Section 23 provides, in substance, that any stockholder of one of the constituent companies who shall refuse to convert his stock into the stock of the consolidated company may, within thirty days after the adoption of the consolidation agreement by the stockholders, apply by petition to the Circuit Court of the county in which the chief office of said company may be kept, or to a judge of said court in vacation, on reasonable notice to said company, "to appoint three disinterested persons to estimate the damage, if any, done to such stockholder by such proposed consolidation, and whose award, or that of a majority of them, when confirmed by the said court, shall be final and conclusive, and the persons so appointed shall also appraise said stock of such stockholder at the full market value thereof without regard to any depreciation or appreciation in consequence of the said consolidation, and the said company may at its election either pay to the said stockholder the amount of damages so found and awarded, if any, or the value of the stock so ascertained and determined;" and upon the payment of the value of the stock the dissenting stockholder is to transfer his stock to the company; and in case the value of the stock is not paid within thirty days from the filing of the award and confirmation thereof by the court, and notice to the company, he is to have judgment against the company for the amount of the damages so found and confirmed, to be collected like other judgments.

Under this legislative authority the two corporations above mentioned, on February 25th, 1910, made an agreement of consolidation, taking the name of the New Jersey and Hudson River Railway and Ferry Company as the name of the consolidated company, and established its principal office in the county of Bergen. In the consolidation agreement it was re-

cited that the consolidation was made under and in pursuance of the provisions of chapter 172 of the laws of 1893 (reciting also the title of the act).

The American Electrical Works, now defendant in error, which was and is a stockholder of the Hudson River Traction Company, dissented from the consolidation and refused to convert its stock, and within the thirty days presented to his honor the Chief Justice a petition, addressed to the Bergen county Circuit Court, in which, after setting forth the making of the consolidation agreement, and averring that the petitioner was unwilling to convert its stock, the prayer was that the court would, "in pursuance of the statute in such case made and provided, upon reasonable notice to the said New Jersey and Hudson River Railway and Ferry Company prescribed by this court, appoint three disinterested appraisers to appraise the full market value of the stock owned by your petitioner, without regard to any depreciation or appreciation thereof in consequence of the said consolidation, and to report thereon to this court, together with their award, and that your petitioner may have such further relief in the premises as may be just and the nature of the case in accordance with the statute in such case made and provided may require."

The Chief Justice, acting as a judge of the Bergen Circuit Court, made an order appointing a time and place, when and where that court would proceed to hear the application and proceed thereon as the law might require, and ordered that notice of the application and of the time and place fixed for the hearing thereof be given to the said New Jersey and Hudson River Railway and Ferry Company.

At the time and place specified the Circuit Court proceeded to make an order designating three disinterested persons "to appraise the full market value of the stock owned by said petitioner in Hudson River Traction Company without regard to any depreciation or appreciation thereof in consequence of the consolidation, and to do whatever else the said appraisers are by law in accordance with the statute in such case made and required (*sic*), authorized or required to do in the premises, and to make such decision and award as to them shall appear

just and proper, and to report thereon to this court together with their award."

This order was brought before the Supreme Court by *certiorari,* and was there attacked upon the ground, among others, that the petition and the order appointing appraisers did not conform to the provisions of section 23 of the Traction act, in that they failed to provide for an estimation of the damage done to the stockholder by the proposed consolidation, as distinguished from an appraisal of his stock; with the result (as claimed) that the consolidated company would be deprived of its option to either pay the amount of the latter appraisement and take the stock, or to pay the damages and leave the stockholder in possession of his stock.

The Supreme Court, deeming (or at least assuming for the purposes of the decision) that the criticism thus made upon the petition and order was well founded, and entertaining the view that it was not properly the subject of amendment in the Circuit Court, held that the stockholder could, by a voluntary stipulation or declaration on its part, afford full protection to the consolidated company by filing in the cause and delivering to the prosecutor a stipulation that its petition and the order of the Circuit Court obtained upon it, and all proceedings had or to be had thereunder, should be conclusively taken as based upon section 23 of chapter 172 of the laws of 1893. Such a stipulation having been filed and served, and the costs of the prosecutor having been tendered, the Supreme Court made an order affirming the proceedings of the Bergen county Circuit Court.

This judgment of affirmance is now before us for review.

We may as well dispose first of an objection that seems to have been taken by the plaintiff in error in the Supreme Court and is renewed here, but which is not referred to in the opinion below. This point is that it was improper to present the petition to the Chief Justice, since he was not the judge of the Bergen Circuit Court. But it appears by the agreed state of facts that at the time the petition was presented, and from thence until the expiration of the thirty days limited by the

statute for its presentation, both Justice Parker, of the Supreme Court, he being the justice assigned to hold the Bergen Circuit, and also Circuit Court Judge Black, likewise assigned to that circuit, were absent from the state. The authority of any justice of the Supreme Court to discharge the duties of judge of the Bergen Circuit in such a juncture is clear from the language of the act relative to the Supreme and Circuit Courts. *Pamph. L.* 1900, *p.* 349, §§ 14, 28.

It is further objected that the order made by the Chief Justice ought to have set out the fact that the Bergen county Circuit Court was not in session, and that Justice Parker and Judge Black were prevented from discharging their duties in the circuit by reason of absence from the state or otherwise. This point is entirely without substance. The Circuit Court is not such a tribunal as needs to display upon the face of its proceedings the facts necessary to exclude the inference that it is erroneously assuming jurisdiction or is proceeding erroneously in any matter within its jurisdiction.

We come now to the main contention, which is, that the petition presented to the Circuit Court and the order appointing appraisers do not conform to the Traction act of 1893 because there is no prayer in the petition for an ascertainment of the damages done to the stockholder, and no mandate in the order requiring the appraisers to take such damages into account or make any return respecting them. It seems to us the criticism is formal rather than substantial. As already shown, the Hudson River Traction Company, in which the petitioner held stock, and also the other company with which it consolidated, were incorporated under the Traction act of 1893. The consolidation agreement was made under and in pursuance of the provisions of that act, and this fact was declared upon the face of the agreement. The petition plainly refers to the agreement, giving its date, the date of its ratification and adoption by the stockholders, and the date of its filing in the office of the secretary of state; and it then prays for the appointment of appraisers to appraise the market value of the stock owned by the petitioner, and for "such further relief in the premises

as may be just and the nature of the case *in accordance with the statute in such case made and provided* may require." It seems to us plain that the statute thus referred to is the statute under which the consolidation agreement was made, and that the prayer for further relief is broad enough to include the granting of other relief, either more or less extensive than appraisal of the full market value of the stock, so long as such other relief is warranted by the statute referred to.

Upon like grounds it seems to us that the order appointing the appraisers is sufficiently explicit. They are thereby required to "appraise the full market value of the stock owned by said petitioner," &c., &c., and "to do whatever else the said appraisers are by law *in accordance with the statute in such case made* and required, authorized or required to do in the premises." Reading this, as it must be read, in connection with the petition and with the consolidation agreement referred to in the petition, it seems to us clear that the statute referred to is the Traction act of 1893; and since that statute requires the damages to be estimated, as well as the market value of the stock to be appraised, the duties of the appraisers are rendered as clear as if section 23 of that act had been recited or specifically referred to in the order.

It seems to us improper to construe such a proceeding as that which is now under review with the strictness that would be appropriate in a penal action, or even in a proceeding for the condemnation of property. This proceeding does not, in our view, partake of the nature of either of these.

It is of course familiar and well-settled law that a majority of the stockholders of a corporation cannot effect a consolidation with another corporation without unanimous consent, unless the right of consolidation has been conferred by legislation that may be read into the contract of incorporation. *Colgate* v. *United States Leather Co.*, 5 *Buch.* 229. And, on familiar principles, a consolidation that is attempted to be made in violation of the rights of minority stockholders may at their instance be restrained by injunction, on the ground that it would violate their contract rights, and thus in effect

take their property without their consent. We may concede, for the purposes of the argument, that the legislature, in furtherance of a public use, might authorize a consolidation to be made, at the will of a majority of the stockholders, notwithstanding the objection of the minority in interest, and without previous legislative authority that could be read into the contract of incorporation, provided provision were at the same time made for compensating the dissenters. And we might in such a case regard the action of the majority as amounting in effect to a taking of the property of the minority stockholders for public use, and deal with it as strictly and technically as would be proper in the case of proceedings taken to condemn the lands of an outside party for public use. But it does not seem to us that proceedings taken by a dissenting stockholder to have compensation for property that is wrested from him for a public use are to be construed with the like strictness. The same considerations that require strictness of procedure from a corporation that assumes to exercise the sovereign power of eminent domain against an unwilling property owner should, in logic, lead to a liberal treatment of the unwilling property owner in his action for recovery of compensation.

However that may be, in the present case, we have an authorization for consolidation that is to be read into the contract of incorporation of each of the companies concerned, because it is contained in the act under which they were respectively organized. It thus was one of the terms under which the American Electrical Works participated in the stock of the Hudson River Traction Company that that company might be consolidated with another, pursuant to section 18 and the succeeding sections of the act, upon making compensation to the stockholder in the manner pointed out by section 23, provided the stockholder dissented from the consolidation and refused to convert his stock. And, on the other hand, when the companies in question made their consolidation agreement, they made it—and no doubt consciously made it—subject to the duty imposed by section 23 to compensate any dissenting

stockholder, either by paying him his damages or by taking his stock and paying him its market value, provided he should make application to the Circuit Court within the time and in the manner pointed out by section 23.

Thus the act contemplates that a consolidation, however desirable in the estimation of a majority of the stockholders, may, in fact, be detrimental to the interests of individual stockholders, and compensation is provided for them accordingly.

The scheme of the act is to provide a simple and prompt remedy for what otherwise might be a serious injustice to the minority stockholders. The majority, in interest, in availing themselves of the privilege conferred by the act to make a consolidation of companies, agree in advance to make compensation to the dissenters in accordance with the decision of appraisers, when the same shall be confirmed by the court. The proceeding is not like an ordinary action at law—much less like a penal action or a proceeding for taking property without the consent of the owner. It is a conventional arrangement, somewhat analogous to that provided by our "Act for regulating references and determining controversies by arbitration" (*Gen. Stat., p.* 69), which permits persons who are desirous of ending any controversy by arbitration to make an agreement that their submission to the award of an arbitrator or arbitrators shall be made a rule of any court of record of this state, and which provides that in case of disobedience to the arbitration the party refusing or neglecting to perform it shall be subject to punishment as for contempt of court.

The remedy afforded by section 23 of the Traction act is not only voluntary as between the parties but is highly beneficial. The section contemplates a simple procedure, beginning with a mere petition followed by reasonable notice to the company, and without elaborate refinements of any kind. The section ought to be liberally construed in aid of the proposed remedy, and the procedure under it ought not to be hampered by the imposition of technical conditions that are not expressed in its language.

We hold, as a matter of interpretation, that the petition and order appointing appraisers under consideration, where they mention "the statute in such case made and provided," refer to the provisions of the Traction act of 1893 respecting consolidation and the making of compensation to dissenting stockholders; and this for the reason that this act was referred to in the consolidation agreement as the authority for the consolidation, and the agreement is referred to in the petition as the ground of the relief thereby prayed.

This leads to an affirmance of the judgment of the Supreme Court, which affirmed the order and proceedings in the Circuit, without regard to the question whether those proceedings were not amendable under the Practice act (*Pamph. L.* 1903, *p.* 572, § 126) and without regard to whether the Supreme Court erred in requiring the petitioning stockholder (now defendant in error) to file the stipulation or declaration above referred to or in basing its judgment thereon.

Let the judgment be affirmed accordingly.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 10.

*For reversal*—None.