R. O. Ahlenius, Appellee, v. Bunn & Humphreys, Inc., Appellant.

Gen. No. 8,506.

178

180

Opinion filed November 4, 1931. Rehearing denied January 7, 1932.

Stone & Taylor and B. L. Catron, for appellant.

W. K. Bracken and Bracken, Livingston & Murphy, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

The rights of the parties in this case are controlled by paragraph 73 of chapter 32, Cahill's Illinois Rev. Stat. which is as follows: "Any stockholder objecting to any action of the corporation in leasing, exchanging or selling all of its corporate assets, or objecting to a merger or consolidation with another corporation (the corporation acquiring such assets by lease, exchange, sale, merger or consolidation being hereinafter referred to as the 'acquiring corporation'), shall be obligated to sell and transfer to the acquiring corporation and the acquiring corporation shall become and be obligated to purchase such share or shares, together with all rights and interests thereby represented, including all cash or securities or other benefits accruing to such share or shares, from or by reason of the sale, lease, merger or consideration at a price equal to the fair value of such share or shares with interest on such fair value at the rate of five per cent per annum from the date such sale, lease, merger, or consolidation was consummated. If such fair value and interest is not paid to such objecting stockholder by such acquiring corporation within thirty days after a mailing of notice thereof to the stockholder at his last known address as shown by the records of the

corporation of such sale, lease, merger or consolidation, then such objecting stockholder may, within sixty days thereafter, file a petition in the Circuit Court of the county in which the principal office of the acquiring corporation is located, asking for a finding and determination of the fair value of such shares of stock. Upon the filing of such petition, the practice and procedure thereon shall be the same, so far as practicable, as that under the eminent domain laws of this State, but the court shall have full power and authority to do all things and enter all such orders as it may deem equitable and just for the purpose of preserving and protecting the rights of the parties of the proceeding during the pendency thereof. Such fair values shall be ascertained and determined as of the date of the consummation of such sale, lease, merger or consolidation, and without regard to any depreciation or appreciation because of or on account of such sale, lease, merger or consolidation.

"The court shall enter judgment against such acquiring corporation for the amount of such fair value, and interest thereon, which judgment may be collected as other judgments at law. Upon the payment of such judgment such stockholder shall cease to have any interest in such stock or in the property of the corporation. Such stock may be held and disposed of by the corporation as it shall see fit.

"Unless such objecting stockholder shall file such petition within the time herein limited, such stockholder and those claiming under him shall be conclusively presumed to have authorized, approved and ratified such sale, lease, merger or consolidation. If at the expiration of thirty days from the time of the consummation of such sale, lease, merger or consolidation, the person in whose name such share or shares shall stand, shall not be living, or shall be under disability, his executor, administrator, guardian, or conservator, as the case may be, shall be entitled to file

such petition within ninety days after mailing of a notice thereof to the stockholder at his last known address as shown by the records of the corporation of the consummation of such sale, lease, merger or consolidation.''

In 1928, J. F. Humphreys & Co., a corporation, with its principal office at Bloomington, Illinois, and John W. Bunn & Co., a corporation, with its principal office at Springfield, Illinois, each organized under the laws of this State and each engaged in the wholesale grocery business, merged and consolidated into one corporation known as Bunn & Humphreys, Inc., which is the appellant on this appeal. On May 16, 1929, R. O. Ahlenius, appellee, who was a stockholder of J. F. Humphreys & Co., filed his petition in the circuit court asserting therein that as a stockholder of said corporation he objected to said consolidation and requested that the value of his stock should be determined and the same paid to him by the acquiring company. The cause was submitted to the court for trial and the court found the value of said stock to have been $12,842.72 and entered judgment against appellant for that amount. There are three questions to be disposed of on this appeal: (1) Was appellee an objecting stockholder? (2) If he was an objecting stockholder, did he file his petition in apt time? (3) Did the court err in its finding of the amount of the fair value of the stock?

The statute under which this action is brought has never been considered or construed by any appellate tribunal in this State so far as we have been able to discover. In the construction of statutes it is first necessary to ascertain, if possible, what the intention of the legislature was in using the terms and language employed therein. It is evident that the legislature in passing the present statute had in mind the protection of stockholders, especially minority stockholders, in the

preservation to them of the fair value of their stock upon the consolidation or merger of the corporation in which they held such stock with another corporation if they did not desire to substitute such stock for stock in the acquiring corporation. The purchase of stock in a corporation organized for pecuniary profit is simply an investment of money in the business of that corporation and certificates of stock are simply evidence of such investment. The statute prevents the forcing of a stockholder to invest his money in another corporation when he does not desire to do so. The term "objecting stockholder" should not receive a literal and narrow construction. In our opinion these words mean any stockholder in a corporation who for any reason, sufficient unto himself, prefers to take the fair value of his stock in the corporation in which he holds the same rather than accept other stock in the acquiring corporation.

The statute provides that the practice and procedure upon the filing of the petition shall be the same, so far as practicable, as that under the eminent domain laws of this State. Under the procedure and practice in eminent domain proceedings, objections to the right of the petitioner to file the petition or to the jurisdiction of the court are legal objections and must be determined before the merits of the case are heard. *Chicago & M. Elec. R. Co. v. Diver,* 213 Ill. 26; *Illinois Cent. R. Co. v. Roskemmer,* 264 Ill. 103. In the cases of *Ward v. Minnesota & N. W. R. R. Co.,* 119 Ill. 287, and *Lieberman v. Chicago & S. S. R. T. R. Co.,* 141 Ill. 140, it was held that if a defendant in an eminent domain proceeding went to trial on the merits without objecting to the right of petitioner to condemn his land for public purposes, he will be held to have waived the necessity of making proof of such right. In the present case appellant made no legal objections to the right of appellee to file his petition except by proposi-

tions of law submitted to the court at the conclusion of all the evidence. The act makes no other reference of the right of the petitioner or respondent to have the value of his stock determined by a jury and while the question of a jury trial is not involved in this particular case because the cause was submitted to the court for trial, yet, if the parties were entitled to a jury, the objections now made to the right of the petitioner to file his petition would have had to have been made prior to such jury hearing. Even under the practice prevailing in eminent domain proceedings, if the cause was submitted to the court for trial without a jury, the legal objections to the right of the petitioner to condemn would have to be first settled before the court heard evidence upon the value of the property. In the present case, if the legal objections to appellee's right to file his petition had been first heard and determined and if the court had found that he had no such right, then the large amount of testimony introduced in regard to the fair value of the stock would have been unnecessary. Unquestionably, the above rule of procedure which obtains in eminent domain proceedings would be practical as well as useful in proceedings under this statute. However, in order to do no injustice to the parties in this proceeding, we will discuss the merits of these legal objections the same as if they had been properly made. The evidence shows that J. F. Humphreys & Co. (hereinafter designated as Humphreys & Co.) had been engaged in the wholesale grocery business and had existed in one form or another since 1854 with its principal office in Bloomington, Illinois. In June, 1928, its capital stock was $800,000, consisting of 4,000 shares in preferred stock at a par value of $100 each and 4,000 shares of common stock of a par value of $100 each. At this time all the common stock was outstanding, of which Rogers Humphreys owned 3,793 shares. There

were also at this time 1,223 shares of preferred stock outstanding. John W. Bunn & Co. (hereinafter designated as Bunn & Co.) had also been in the wholesale grocery business for many years with its principal office at Springfield, Illinois. Geo. W. Bunn, Sr., as an individual and as trustee of the estate of John W. Bunn, deceased, owned and controlled a substantial majority of the stock in Bunn & Co. There were but seven stockholders in Humphreys & Co. and an equal number in Bunn & Co. For about 10 years prior to the consolidation, R. O. Ahlenius, appellee, had been vice president and general manager of Humphreys & Co. He was also owner of 150 shares of its common capital stock of a par value of $100 each. He first bought 10 shares October 30, 1918, at $125 per share. His next purchase was of 90 shares January 16, 1920, at $133 per share and his last purchase was 50 shares March 19, 1924, at $154.35 per share. On the first day of June, 1928, Rogers Humphreys for and on behalf of Humphreys & Co. and George W. Bunn, Sr. for and on behalf of Bunn & Co. entered into a preliminary agreement in writing for the consolidation of the two companies. This agreement provided partly, in substance, that the said Bunn and the said Humphreys shall forthwith take steps to submit to their respective stockholders in accordance with the provisions of the statute and to be passed by said stockholders, suitable resolutions, providing for the merger or consolidation of the two companies, which said resolutions shall specify the terms and conditions of said merger, which terms and conditions shall be substantially as follows: (a) Bunn & Co. shall, prior to said merger, sell or dispose of all of its assets which are not by this contract to be taken into the common enterprise, and Humphreys & Co. shall do likewise, the general description of such assets is, (1) real estate; (2) accounts being doubtful; (3) certain furniture and equip-

ment; (4) and any other assets not specified as becoming assets of the consolidated company. This agreement also contains the following provision: "It is further understood that appropriate Resolutions shall be prepared for presentation by the respective Boards of Directors of the consolidating companies and for adoption at the stockholders' meetings, which resolutions shall embody all of the portions of said agreement that are essential to be included in the action of said Boards of Directors and said stockholders."

Appellee testified, although this testimony was excluded by the court as being immaterial, that during the negotiations by Humphreys & Co. and Bunn & Co. for said consolidation Rogers Humphreys informed him that he would try to procure a similar position for him in the new firm as he held in Humphreys & Co. but if he could not do so he would buy his 150 shares of stock and that Rogers Humphreys later informed him that he could not procure a position for him in the new company on account of the opposition of Bunn & Co.; that he thereupon informed Rogers Humphreys that he had several business opportunities offered to him, the acceptance of which would require the sale of his stock in Humphreys & Co. and that Rogers Humphreys refused to buy said stock.

A special meeting of the board of directors of Humphreys & Co. for the purpose of considering the consolidation was held June 4, 1928, and appellee was present at this meeting. At this meeting a resolution was adopted part of which is as follows:

"WHEREAS negotiations have been had with John W. Bunn & Co. of Springfield, Illinois, an Illinois corporation, engaged in the wholesale grocery business, looking to the consolidation of said corporation with the corporation of J. F. Humphreys & Co.; and

"WHEREAS this Board of Directors believes said consolidation to be for the best interests of said Company.

"It Is Therefore Resolved that J. F. Humphreys & Co. do merge and consolidate with John W. Bunn & Co., an Illinois corporation, and that the terms and conditions of said merger or consolidation shall be as follows:

"1. Each of said corporations shall sell or dispose of all its real estate, doubtful accounts, and such furniture and equipment as shall not be necessary for the proper conduct of the consolidated business.

"2. The inventories of John W. Bunn & Co., together with its accounts receivable and notes deemed good, office furniture and fixtures, delivery equipment and insurance, including like assets of the Capitol Grocery Company, the same being represented by its capital stock, which is now owned by the said John W. Bunn & Co., together with all cash on hand possessed by either John W. Bunn & Co. or the Capitol Grocery Company as at the close of business June 30, 1928, shall constitute the contribution of the said John W. Bunn & Co. to the capital assets of said consolidated corporation; and the inventories of J. F. Humphreys & Co., together with its accounts receivable and notes deemed good, office furniture and fixtures, delivery equipment and insurance, together with all cash on hand as at the close of business June 30, 1928, shall constitute the contribution of J. F. Humphreys & Co. to said capital assets.

"3. The value of the assets provided for in Item 2 above shall be determined as at the close of business June 30, 1928, at their then cost price or market value, whichever shall then be the lower."

Appellee voted for this resolution relying upon the agreement of Rogers Humphreys that the latter would purchase his stock if he was not given a position in the consolidated company. The minutes of this meeting also show that a resolution was passed calling a meeting of the stockholders for the 26th day of June,

1928, for the purpose of considering the foregoing resolution. The following proceedings also appear in the minutes of this meeting: ''The President thereupon announced that in order to comply with the proposed plan of consolidation that it was necessary for this company to dispose of its real estate and doubtful accounts, that one of the stockholders, Rogers Humphreys, had submitted for the action of the Board a Proposal in the following words and figures, that is to say:

''Bloomington, Illinois, June 4, 1928.
''To J. F. Humphreys & Co.
''Gentlemen:

''I propose to purchase, acquire and take over the real estate of J. F. Humphreys & Co., described as follows:

''The West Half of the Southeast Quarter of the Southwest Quarter of Section 24, Township 22 South, Range 28 East, in the County of Orange and State of Florida.

''The South one-half of the Southeast one-fourth of the Southeast one-fourth of Section 19, Township 11, Range 7 East of the Third Principal Meridian, situated in the County of Coles and State of Illinois.

''The West one-half of Lot 3 and all of Lot 2, in Block 10, of the Original Town of Lexington, in the County of McLean and State of Illinois.

''Lots 1 and 2, being the whole of the Harber Brothers Company subdivision of the North end of Block 5, of Miller, Foster and Others Addition to the Town (now city) of Bloomington as shown in Book 4 of Plat Books of McLean County, at page 536, situated in the City of Bloomington, McLean County, Illinois.

''Lot 11, Block 5, in Bell's Addition to the City of Bloomington, situated in the County of McLean, in the State of Illinois, now carried in the name of Rogers Humphreys.

"Lot 672 in the Harvard Park Second Plat in the City of Springfield, Illinois, the same being a subdivision situated in the Southwest Quarter of Section 3, and the Northwest Quarter of Section 10, Township 15 North, Range 5 West of the Third Principal Meridian, situated in Sangamon County, Illinois, now carried in the name of Rogers Humphreys; and to at the same time purchase and take over certain accounts of J. F. Humphreys & Co. deemed doubtful, a list of which is attached hereto and to pay for the same by the transfer to J. F. Humphreys & Co. of . . . shares of the capital stock of the said J. F. Humphreys & Co. now standing on its books in my name.

Rogers Humphreys.''

A resolution was adopted approving of the sale of the real estate and accounts to Rogers Humphreys in accordance with his written offer. Appellee was present and voted for these resolutions. At the stockholders' meeting held June 26, 1928, a resolution was adopted approving the resolutions adopted by the board of directors. At this meeting the president stated that in order to comply with the requirements of a proper certificate to the Secretary of State it would be necessary to determine the exact holdings of the various stockholders as a result of the appraisal and inventory provided for in the resolution theretofore adopted and that this could not be determined until after the close of business June 30, 1928, and suggested the advisability of adjourning said meeting for four weeks in order to provide ample time for the taking of said inventories and fixing of said rights at which time a resolution embodying all of the necessary information could be passed, and in accordance with these suggestions the following resolution was adopted:

"Be It Resolved that this meeting be, and is hereby adjourned, to meet at the office of the Company on the 24th day of July, 1928, at two o'clock p. m., to there

consider and pass upon a Resolution first hereinabove adopted for the consolidation of this company with that of John W. Bunn & Co. of Springfield, Illinois, and including in addition thereto the specific data required with reference to the holdings of the individual stockholders so that a proper return thereof can be made to the Secretary of State.'' It appears that no business was transacted at the special adjourned meeting of the stockholders of July 24, but that said special meeting was adjourned from time to time until September 21, 1928. In the meantime at one of the adjourned stockholders' meetings held August 10, 1928, appellee presented at said meeting the following communication:

"Bloomington, Illinois, August 10, 1928

"To THE STOCKHOLDERS OF J. F. HUMPHREYS & COMPANY, IN ADJOURNED MEETING ASSEMBLED.

"Gentlemen:

"This meeting was called to be held on June 24, 1928, at which time a resolution was adopted to the effect that J. F. Humphreys & Company do merge and consolidate with John W. Bunn & Company, as Bunn-Humphreys Company, Inc. As a stockholder of J. F. Humphreys & Company I voted for said resolution at said meeting, in consideration of Rogers Humphreys having assured me, prior to the holding of that meeting, that he would arrange to take over or purchase my 150 shares of the Common Capital Stock of said J. F. Humphreys & Company.

"Inasmuch as Mr. Humphreys has since informed me that he will not be able to comply with his promise because of opposition from the Bunn interests, I deem it advisable, and in this manner, to inform all of the stockholders of said J. F. Humphreys & Company now assembled in the adjourned meeting of the above recited facts.

"It was my right and privilege, under the law, at said meeting of June 24, 1928, and it is also my right and privilege at this adjournment thereof, to object to the said merger or consolidation of said J. F. Humphreys & Company with said John W. Bunn & Company; and it is also my right and privilege now, and for the reasons above stated, to change my vote upon said resolution and to give notice to said acquiring corporation to pay to me in due course the fair value of my said 150 shares of Common Capital Stock of said J. F. Humphreys & Company, and I do hereby object to said merger or consolidation of said J. F. Humphreys & Company with said John W. Bunn & Company and I do hereby give notice to all parties concerned that it is my intention to change my vote on said resolution from the affirmative to the negative. I also do hereby give notice to said stockholders here assembled, and to said acquiring corporation, to pay to me in due course as provided by the statutes, the fair value of my said 150 shares of Common Capital Stock of said J. F. Humphreys & Company.

"I do now, therefore, move the reconsideration of said resolution adopted at the meeting of the stockholders of J. F. Humphreys & Company held on June 24, 1928, concerning the merger or consolidation of said J. F. Humphreys & Company with said John W. Bunn & Company.

(Signed) R. O. AHLENIUS."

At the meeting of the stockholders on September 21, 1928, Rogers Humphreys declared that since the last meeting of the stockholders the inventories and assets of Humphreys & Co. and Bunn & Co. had been carefully checked and reduced to its sound values and that the proportionate amount of stock going to each stockholder had been determined and that it was found among other things that it was difficult to determine the value of the proposed accounts receivable which

were by resolution adopted on June 4, 1928, to be taken out of the company and purchased by Rogers Humphreys and it was desirable to separate said assets and have the same set apart and given into the charge of the consolidated company to be liquidated for the use and benefit of the stockholders of Humphreys & Co. as they now appear upon the books of said company and that such an arrangement had been made and *that the value of the assets to be turned over to Rogers Humphreys under his proposal had been determined upon that basis and the proportionate shares of stock which he was to surrender to the company for the assets taken out had likewise been determined and was in fact 1,102 shares* and that it would be in order to pass resolutions touching the consolidation of said companies. Whereupon the following resolution was presented and adopted, all of the stockholders present voting therefor except appellee, who voted against the adoption of the resolution. The resolution is as follows:

"Be It Resolved that the action of the officers and Directors of J. F. Humphreys & Co. with reference to the assets proposed to be taken out of said company in exchange for capital stock by Rogers Humphreys as above explained by the President of the Company be, and it is hereby approved."

At this meeting the following resolution was also adopted, appellee voting against it:

"Be It Resolved that John W. Bunn & Co. a corporation with its principal place of business at Springfield, Illinois, and J. F. Humphreys & Co., a corporation with its principal place of business at Bloomington, Illinois, be, and the same are hereby consolidated into a single corporation, upon the terms and conditions hereinafter set forth, which conditions are as follows:" (Here follow complete details of the consolidation.)

It is apparent that the final resolution for consolidation was not adopted by the stockholders of Humphreys & Co. until September 21, 1928, and this resolution was voted against by appellee. At this meeting the minutes show that appellee stated in explanation of his negative vote that it was not his intention or purpose to oppose the consolidation of Humphreys & Co. and Bunn & Co. but that his negative vote was to preserve his own rights under the statute. He further stated that he had given formal notice and demand to the acquiring corporation that they purchase his 150 shares of common stock. It is submitted by appellant that because appellee voted for the original resolution for consolidation at the directors' meeting held June 4, 1928, and for the similar resolution adopted by the stockholders at their first meeting held on June 26, 1928, that he is now estopped from claiming that he was an objecting stockholder. This contention cannot be sustained. Appellee had the right at any time before the adoption of the final resolution for the consolidation to register his objection thereto. He may have had many reasons during the progress of the negotiations to have changed his mind.

It is claimed also by appellant that appellee is barred from recovering the fair value of his stock for the reason that he is guilty of laches in filing his petition. The statute requires that if the fair value of such stock is not paid to such objecting stockholder by the acquiring corporation within 30 days after mailing of notice thereof to the stockholder at his last known address as shown by the records of the corporation of such consolidation, then such objecting stockholder may within 60 days thereafter file his petition in the circuit court of the county in which the principal office of the acquiring corporation is located asking for a finding and determination of the fair value of such shares of stock. It is conceded no such notice was ever

mailed to appellee at any time. Therefore, he was not bound by the 60-day limitation.

After the final resolutions of consolidation were adopted negotiations for the purchase of appellee's stock by appellant were carried on between it and appellee and by their respective attorneys until April 5, 1929. These negotiations consisted of offers and counter-offers between the parties and it was not until the latter date that it was conceded by the parties and their attorney that no amicable agreement could be reached as to the purchase of appellee's shares of stock by appellant and appellee was informed by appellant that it had withdrawn all offers for the purchase of said stock and was not further interested in the matter. The petition was filed by appellee May 16, 1929. Under these circumstances laches in bringing the action cannot be presumed.

The statute provides that the fair value of the stock shall be ascertained and determined as of the date of the consummation of such consolidation and without regard to any depreciation or appreciation because of or on account of such consolidation. It is contended by appellant that the date of the consolidation was the date on which the secretary of state issued his certificate of consolidation which was October 22, 1928, and the trial court so held and determined the fair valuation of the shares of stock of appellee as of that date. Appellee contends that the date of consolidation so far as appellee is concerned was June 30, 1928, because the agreement between the consolidating companies was that the value of all the assets and the amount of liabilities of each of the consolidating companies was to be determined as of that date and that the value of the real estate and other assets sold to Rogers Humphreys and the value of the stock which he exchanged therefor were all fixed and determined as of June 30, 1928. We are of the opinion that the actual

consolidation was consummated on September 21, 1928, the date when the final resolutions for consolidation were adopted by a vote of both of the merging companies but it is also our opinion that the actual date of consolidation can have but little bearing on the rights of the parties in this proceeding, notwithstanding that the statute fixes the date at which the value of an objecting stockholder's stock shall be fixed as the date of consolidation because the statute also provides that such fair valuation shall be ascertained and determined without regard to any depreciation or appreciation because of or on account of such consolidation. The statute never contemplated that during the process of consolidation and as a part of the agreement thereof either of the consolidating companies could divest itself of a large portion of its assets and thereby reduce the value of the stock owned by an objecting stockholder. All the real estate of Humphreys & Co. and a large amount of its other assets were transferred to Rogers Humphreys by that corporation in exchange for 1,102 shares of the common stock thereof owned by Rogers Humphreys. In order to arrive at the value of the property, real and personal, so transferred to Rogers Humphreys and to determine the value of the stock to be given by him therefor, the stockholders' meeting was adjourned· from June 26 to September 21. During this time complete inventories of the assets and liabilities of the property of Humphreys & Co. and a thorough examination thereof were made and caused to be made by Rogers Humphreys with the assistance of the witness Flood, one of the officers of the consolidated company. As a result of this examination it was determined that the value of the assets of Humphreys & Co. transferred to Rogers Humphreys was $128,349.94 and that the proportionate shares of stock which Rogers Humphreys was to surrender to the company for such as-

sets taken out "was in fact 1,102 shares," thus determining that the value of each share of common stock of Humphreys & Co. at that time was $116.47 and the record of the transfer on the books of the company shows that the valuation of these 1,102 shares of the common stock of Rogers Humphreys was received by Humphreys & Co. at this valuation. We know of no better evidence of the value of the common stock of Humphreys & Co. on June 30, 1928, than that placed upon it by each of the consolidating companies after an examination by them for the purpose of determining such value extending over a period of three months. Under the procedure and practice which obtains in eminent domain proceedings, recent sales of land similar to that sought to be condemned has always been considered competent evidence. The trial court refused to adopt this valuation of the stock but decided that said valuation should be determined as of October 22, 1928, when the certificate of consolidation was issued by the secretary of state. Among other things he eliminated the item of $100,000 which was carried on the books of Humphreys & Co. as an asset for the good will of the company, for the reason that there was some oral testimony to the effect that Humphreys & Co. for the past two or three years prior to that time had not made a profit though no books of the company were introduced to support this evidence. The corporation itself either as a firm, partnership or corporation had existed since 1854. On January 12, 1891, Humphreys & Co. was organized as a corporation and thus at the time of the consolidation had existed as such for 37 years. At the time of the consolidation it was employing 100 people and its business had averaged approximately $2,000,000 a year. Counsel for appellee made the following offer of proof to which the court sustained an objection: "Then I offer to show, if I am permitted to ask the question and the

witness to answer it, that J. F. Humphreys & Co. were organized as a corporation on January 12, 1891; that this corporation took over and continued the wholesale grocery business of Humphreys, Evans & Co., which had been in business as wholesale grocers in Bloomington for many years prior to the date of the incorporation of J. F. Humphreys & Co.; that the company covered a large territory, had many hundreds of customers among retail grocers and others, a large number of traveling salesmen, and, among other things, it developed, established and put on the market brands of goods known as Wedding Ring and Wish Bone brands, which became known as standard and high class brands identified with this business, and have a large value in the trade. That the business also included handling and roasting of coffees and other products; that many brands were put out under the name of J. F. Humphreys & Co., and identified with it as among the best that the market provided for this kind and class of goods in the wholesale business; that this company stood among the highest in the country and had a reputation, and has yet, of being one of the oldest, most conservative and of the highest class in the country. All of which, notwithstanding the fact that there may have been some losses at times, under our contention makes the good will of substantial value and amount.''

In 28 C. J. 730, it is held: ''Good will is property recognized and protected by law as such, and capable of sale or other transfer from one owner to another in connection with a transfer of the property, business, or other rights to which it is incident. It is an asset which may be sold in connection with a business to pay creditors.''

Quoting further from the same authority it is held (page 735): ''Business corporations, as well as individuals, may have a good will connected with their

property, business, or other rights; it is the property of the corporation alone, and can be transferred only by it. . . . As the good will adheres to the corporate business, where a stockholder sells his stock his interest in the good will of the business goes with it. . . . No rigid and unvarying rule for the determination of the value of good will has been laid down by the courts; each case must be determined on its own facts and circumstances. The determination of the question must, within proper limits, be left to the jury, whose conclusion must rest upon evidence legitimately tending to establish value and supporting the verdict. . . . The purchaser of a business together with its good will may in turn assign such business and good will to another.''

In 12 R. C. L. 978, it is held: ''It has repeatedly been held that good will is a valuable asset of the business of which it is a constituent part, unless of too uncertain and contingent a nature to be the subject of appraisement and estimation.'' The trial court also in arriving at the valuation of the fair value of the stock in addition to eliminating from the assets of the company the property, real and personal, transferred to Rogers Humphreys and the good will, eliminated a number of other items carried as assets on the books of the company and declared some of the contested items assets and some of them liabilities and arrived at his finding of the value of the stock in the amount hereinbefore noted. In our opinion it is unnecessary to discuss these particular items for the reason that we find from the evidence that the fair valuation of the stock held by appellee should have been computed at the rate of $116.47 per share, in accordance with one of the cross errors assigned, making the total for the principal debt $17,470.50 on which interest should have been charged at the rate of five per cent per annum from September 21, 1928. If at

the close of business of Humphreys & Co. on June 30, 1928, the fair value of the common stock owned by Rogers Humphreys was $116.47 per share as determined by both of the consolidating companies, then the 150 shares of said common stock owned by appellee had an equal value and such value could not be depreciated or appreciated because of or on account of such consolidation. As this cause was submitted to the court for trial without a jury it is ordered that the following judgment be entered herein:

It is ordered and adjudged by this court that the judgment of the circuit court of McLean county be and the same is hereby reversed.

It is further ordered and adjudged by this court that R. O. Ahlenius, petitioner, have and recover of and from Bunn & Humphreys, Inc., a corporation, respondent, the sum of twenty thousand one hundred forty-four dollars ($20,144) damages, together with his costs by him in this behalf expended and that execution issue therefor.

*Reversed.*