THE SALT DOME OIL CORPORATION,

Defendant Below, Appellant,

*vs.*

WILLIAM A. SCHENCK, ERNEST F. WILDERMUTH and HENRY KRINSKY,

Complainants Below, Appellees.

*Supreme Court, On Appeal, February 5, 1945.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Caleb S. Layton*, of the firm of Richards, Layton & Finger, (Schofield Andrews and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., of counsel), for appellant.

*William S. Potter* and *Collins J. Seitz*, of the firm of Southerland, Berl & Potter, for appellees.

LAYTON, Chief Justice, delivering the opinion of the court:

This is an appeal from an order of the Court of Chancery for New Castle County appointing appraisers to value stock of dissatisfied stockholders under the merger provisions of the *General Corporation Law.* (*Rev. Code* 1935, *Ch.* 65. §§ 2091—2094, *Secs.* 59-62, as amended by *Ch.* 131, *Vol.* 41, *Del.Laws,* approved April 13, 1937, and by *Ch.* 132, *Vol.* 43, *Del.Laws,* approved April 9, 1941) ; and also an appeal from an order denying the respondent leave to amend its answer. The amendments to the sections found in *Chapter* 125, *Volume* 44, *Delaware Laws,* approved April 15, 1943, are not involved.

By *Section* 59 any two or more corporations organized under the provisions of the chapter may merge or consolidate into a single corporation by entering into an agreement submitted to the stockholders of each constitutent corporation at meetings called separately and obtaining thereat the votes of stockholders of each corporation representing two-thirds of the total number of shares of its capital stock.

By *Section* 61 any stockholder who objected in writing to the merger or consolidation may demand from the resulting or surviving corporation, and is entitled to receive from it, the value of his stock at the date of the merger by following a certain procedure. Having objected in writing to

the proposed merger, the stockholder is required to demand in writing from the resulting corporation payment for his stock within twenty days after the merger has been accomplished, and the corporation within three months is obliged to pay to him the value of his stock at the date of the merger, exclusive of any element of value arising from the expectation or accomplishment of the merger. If within thirty days after demand for payment the parties have not reached an agreement as to value, the stockholder may demand an appraisal by three disinterested appraisers, one to be selected by him, another by the corporation, and the third by the two so selected. If, however, the corporation fails or refuses to designate an appraiser, or if the two designated appraisers fail to select the third appraiser, the stockholder may apply to the Chancellor to designate a second and third appraiser, or a third appraiser as the case may be. The decision of the appraisers is final and conclusive on the parties, and the amount of the appraisal is made collectible from the resulting corporation as other debts are collectible by law.

The material facts alleged in the bill of complaint are these: On October 16, 1942, the Salt Dome Oil Corporation and Gulfboard Oil Corporation, both organized under the laws of this State, entered into an agreement of merger. On November 24 following the stockholders of the two companies were notified of the intention to merge, and that special meetings of stockholders would be held on December 15 for the purpose of voting upon the adoption or rejection of the merger agreement. On December 11, 1942, the complainants wrote letters to each of the corporations, similar in form and content except as to the name of the corporation, saying, "we, the undersigned, stockholders * * * do hereby object to the approval and adoption of the agreement of merger, dated as of October 16, 1942 * * *", and "Enclosed herewith are our proxies, each instructing that our votes be cast against the adoption of the agreement of merger." The proxies, bearing the same date as the letters, were

in the usual form, and on each of them following the signatures of the complainants were statements with respect to the number and ownership of shares, on The Salt Dome Oil Corporation proxy "Together owning 7250 shares 7100 shares of which are on the books in the name of Guido Pantaleoni, Jr.; on the Gulfboard Oil Corporation proxy, "Together owning 10,000 shares which are on the books in the name of Berberich & Co. for our benefit." The merger of the two corporations was accomplished on December 28, 1942, the resulting or surviving corporation retaining the name "The Salt Dome Oil Corporation." On January 16, 1943, the complainants made demand in writing on the respondent, the surviving corporation, for payment of the value of their shares, and the demand being ignored, they applied to the Chancellor for the appointment of appraisers. The complainants alleged that they were, jointly, the owners of 7100 shares of the common capital stock of The Salt Dome Oil Corporation, duly registered on the books of the corporation in the name of Guido Pantaleoni, Jr., and 10,000 shares of the common capital stock of Gulfboard Oil Corporation, duly registered on the books of the corporation in the name of Berberich & Co., and that the record holders held the shares solely for the benefit of the complainants; and that they had in their possession certificates for the shares, duly endorsed in blank by the record holders; that on February 23, 1943, the complainants designated an appraiser to act for them, and requested the respondent within thirty days to designate its appraiser; and that the respondent failed and refused to designate its appraiser. It was prayed that the Chancellor designate the second and third appraiser, and order the appraisers to fix the value of the shares of stock.

No explanation was given of the failure of the record holders to act in the premises; nor did it appear that the certificates of stock were ever exhibited to the two corporations or to the resulting corporation.

The respondent demurred on the ground that the complainants were not stockholders of the two corporations entitled to demand the appraisement and payment of the value of any stock in the two corporations; and it also filed an answer, and later moved to amend its answer by alleging that the record holders of the shares of stock were essential parties. The Chancellor overruled the demurrer (27 *Del. Ch.* 234, 34 *A.2d* 249). The motion for leave to amend the answer was denied (*ante p.* 54, 37 *A.* 2d 64). An order was entered appointing appraisers, and these appeals followed.

The broad question raised by the demurrer involves the status under the then existing law of a holder of a certificate representing shares of stock in a Delaware corporation, indorsed in blank, but not recorded on the corporate books. The precise question is whether the holder of such a certificate is a stockholder within he contemplation of *Section* 61, entitled to object to a proposed merger of corporations, to demand appraisal of and payment for his shares, and to sue at law to recover the amount of the appraisal upon non-payment.

The term "stockholder" ordinarily is taken to apply to the holder of the legal title to shares of stock. In most jurisdictions registration, or its equivalent, is essential to pass the legal title as against the corporation; and the unregistered transferee is not entitled to the rights and privileges of a stockholder in his relations with the corporation. Whatever may be the equitable rights that may arise by a delivery of the stock certificate accompanied with a power of attorney for its transfer, the legal title and legal rights and liabilities of the stockholder of record remain unchanged until the transfer is actually accomplished. The record owner may be but the nominal owner, and, technically, a trustee for the holder of the certificate, but legally he is still a stockholder, and may be treated as the owner by the corporation. 18 *C.J.S., Corporations,* § 475, *p.* 1144; 12 *Fletcher, Cyc. Corp., (Perm. Ed.)* 329, 335; *Russell v. Easterbrook,* 71

*Conn.* 50, 40 *A.* 905. The learned Chancellor seems to have accepted these concepts as sound in the case of *In re Giant Portland Cement Co.*, 26 *Del.Ch.* 32, 21 *A.2d* 697, 701; and there he cited *Cheatham v. Wheeling & L. E. Ry. Co.*, (*D.C.*) 37 *F.2d* 593, 596 in which it was said

> "It is obvious that the only persons who are integrated with the corporation as stockholders are those persons who are stockholders of record on the stock books of the corporation. To hold otherwise would lead to corporate chaos. The holder of a 'street certificate,' i. e. a certificate of stock indorsed in blank by a stockholder of record or the holder of a certificate indorsed to the holder by name, is not a stockholder, although he has been given an irrevocable assignment of his transferor's rights. * * * His rights as against the corporation are inchoate only until the transfer is consummated by the surrender of the indorsed certificate and the issue of a new certificate in his name. Until then he is not entitled to the privileges or emoluments of stockholders, nor does he come under the liabilities, if any, which may be inherent in such a status. * * * Cases of attempted intervention by strangers in intracorporate affairs are not rare. They are almost always initiated by the holders of 'street certificates' or their equivalent, and the rights claimed by such persons usually are and always should be denied."

The question is an open one in this State although there are dicta to the contrary to be found in the decisions. See *Drug, Inc., v. Hunt*, 5 *W.W.Harr.* 339, 168 *A.* 87; *Haskell v. Middle States Petroleum Co.*, 5 *W.W.Harr.* 380, 165 *A.* 562. In *Woods v. Spoturno, Administrator, et al.*, 7 *W.W.Harr.* 295, 183 *A.* 319, the plaintiff in an action at law, by way of foreign attachment, caused shares of stock of one Francois Coty, or his right or interest in them, to be seized. The shares were registered on the books of the corporation in the names of Coty's nominees. A default judgment was obtained. Coty died. A writ of *scire facias* was issued to make his personal representatives parties defendant; and they appeared specially and moved to quash the writ. The motion was refused, and a writ of error followed. In *Spoturno, Administrator v. Woods*, 8 *W.W.Harr.* 378, 192 *A.* 689, 695, the question, as we viewed it, was whether the foreign attachment statute (§§ 2124-2127, *Rev.Code* 1935)

authorizing an attachment of stock, or right or interest therein, as against one who was not registered as the owner of the stock on the corporate books, afforded due process of law, having in mind the reasonable probability of communication of notice of the seizure of the stock to the real owner of the shares either by the corporation or by the registered owner. We thought it necessary to consider the status of an unregistered owner of shares of stock in a Delaware corporation in an action at law, and we were careful not to decide that transfer of shares on the corporate books was not a necessary requisite of legal ownership. We referred to a statement to that effect appearing in *Drug, Inc., v. Hunt, supra,* as a dictum, and said that in none of the cases cited in support of the dictum, or in other decisions in this State was the precise question at issue or decided; and we further characterized the defendant in the action as a "stranger in law to the corporation."

In *State ex rel. Healy v. Superior Oil Corporation,* 1 *Terry* 460, 13 *A.2d* 453, 456, the record owner of stock sought by mandamus to enforce his right to inspect the corporate records, and was met by the contention that he was not the owner of the stock, but merely a nominee, and, therefore, not the real party in interest. The statute (*Section 2061, Sec. 29, Rev.Code* 1935) provides, it is true, that the original or duplicate stock ledger shall be the only evidence as to who are stockholders entitled to examine the list of stockholders or the corporate books. The Superior Court referred to decisions holding that a "stockholder" is one whose status appears as such upon the books of the company, citing, *inter alia,* and quoting from *Cheatham v. Wheeling & L. E. Ry. Co., supra;* and, in answer to the contention that *Section* 29 provides for a list of stockholders only insofar as it relates to corporate elections, said,

"The list of stockholders is not only the list of those having the right to vote at the stockholders' meeting, but is a list of stockholders entitled to 'examine the books of the corporation.' This right to examine the books of the corporation is not a right usually to be exer-

cised at the corporate election, and the list of stockholders is a continuing list for all proper purposes, and has so been uniformly considered by the Courts of this State."

In *State ex rel. Crowder v. Sperry Corporation,* 2 *Terry* 84, 15 *A.2d* 661, 664, the holder of a voting trust certificate establishing his right to a stock certificate at a future time, but expressly conferring on the voting trustees all the rights of stockholders, attempted to compel by mandamus an inspection of corporate records. The same court held the question to be whether, apart from the statute, one having a right purely equitable may enforce it by an action strictly legal, and, in denying the remedy, said, "legal remedy suggests a legal right. In law, the relator is a stranger to the corporation."

We are not concerned here with a question arising as between a transferor and transferee of stock, or as between a non-recorded transferee and a third person as to which the corporation is indifferent; nor does the question relate to the status of an equitable owner of the stock, in a court of equity, in pursuit of an equitable remedy. In *Chadwick v. Parkhill Corporation,* 16 *Del.Ch.* 105, 141 *A.* 823, the equitable owner of shares of stock brought her bill of complaint praying for the appointment of a receiver. The record owner of the shares, who was charged with misdeeds for which the receivership was sought as the corrective remedy, sought to intervene. The late Chancellor referred to the complainant as the true owner of the stock, explaining the terminology by pointing out that the consideration given for the property transferred to the corporation was the complainant's and that the stock issued by it to the record holder was hers. There is nothing in the decision to support the assumption that Chancellor Wolcott meant to say that the complainant had the status of a stockholder, entitled to intrude in intracorporate matters. *Chandler v. Bellanca Aircraft Corporation,* 19 *Del.Ch.* 57, 162 *A.* 63, arose upon an application by the complainant, a holder of a voting trust certificate, to review a corporate election under the provi-

sions of *Section* 31 of the *Corporation Law* which, in terms, confers on the Chancellor the power to hear and determine the validity of any election of any director or officer upon the application of a stockholder. It was contended that the complainant, having transferred his stock to voting trustees, did not qualify as a stockholder of the corporation. The Chancellor held that a voting trust is a trust in the accepted equitable sense, subject to the principles which regulate the administration of trusts. The complainant was plainly the equitable owner of the stock transferred to the voting trustees. He charged an improper performance of duty on the part of his trustees with the result that there was no lawful election of directors. The trustees were parties defendant. The complainant, the equitable owner, was pursuing his remedy for a breach of trust before the Chancellor who had specific authority to determine the validity of the election. The voting trust was created under the provisions of *Section* 15 of the *Corporation Law*. Necessarily, the equitable rights of the depositors of shares in a voting trust are to be recognized in equity. It would seem quite unreasonable to hold that the equitable owner of the shares was without the statutory remedy as against the trustee acting wrongfully. The word "stockholder" as it appears in *Section* 31, was intended, *ex necessitate,* to embrace the non-recorded owner of the stock as against voting trustees of a voting trust, otherwise he would have been without remedy. It is clear that the late Chancellor did not intend to hold that the complainant was in any sense the legal owner of the stock, entitled to intervene in matters of internal management. This is clear from the language he used. "Considering," said he, "the equities of the situation of a holder of voting trust certificates, it would be an unjustifiably invidious distinction that would remove him from the category of 'stockholder' * * * when all that he seeks to do is to ascertain whether or not one of the important purposes of the trust to which he is a party, * * * had been faithfully served." The case of *Spoturno, Adminis-*

*trator, v. Woods, supra,* came before us some five years after the decision in this case. The late Chancellor was a member of this court in the *Spoturno* case, and we are satisfied that he found nothing in the decision to conflict with his views in the *Chandler* case.

There are general expressions to be found in some of the decisions to the effect that merger statutes are to be construed liberally in favor of the objecting stockholder for the reason that such statutes are enacted for the benefit of minority stockholders. *New Jersey & H. R. R. Co. v. American Electrical Works,* 82 *N.J.L.* 391, 81 *A.* 989, and *Ahlenius v. Bunn & Humphreys Inc.,* 264 *Ill.App.* 177, are examples; but the interested stockholders in these cases were, so far as appears, the registered owners of the stock. The decisions did not turn upon the meaning to be given to the word "stockholder," nor did the language of the decisions refer to the quality of stock ownership. And, moreover, it may be doubted that such expressions are wholly accurate. At common law it was within the power of a single stockholder to prevent a merger. It was when the idea became generally accepted that in the interest of changing economic conditions mergers should be permitted despite the opposition of minorities that statutes were enacted in many states, as in this State, which took away from the individual stockholder, the power to defeat the consolidation, and in return offered him compensation in money if he elected to sever his connection with the corporation. *Chicago Corporation v. Munds, et al.,* 20 *Del.Ch.* 142, 172 *A.* 452. Merger statutes are enacted, not in aid of dissenting shareholders alone, but are as well in aid of majority stockholders, and also in aid of the public welfare if the notion is not entirely outmoded that healthy business corporations are in some degree conducive to the general good. The banking situation in recent years is an illustration.

There is a dearth of precise authority. The court below relied largely on *Chandler v. Bellanca Aircraft Corpora-*

*tion, supra,* which is not controlling here, and upon *In re Rowe,* 107 *Misc.* 549, 176 *N.Y.S.* 753, which seems to be the only cited case directly in point. In that case a single judge held that in an appraisal statute (*Secs.* 16, *and* 17, *Ch.* 61, *Laws of* 1909) the word "stockholder" meant not only those in whose names the stock was registered, but as well those who held stock by unrecorded assignment, saying that if the Legislature had intended that only stockholders of record should have the benefit of the statute it would have said so. The force of the decision as expressive of legislative intent is greatly lessened by the fact that not long after the decision the Legislature, by amendment to the Act, (*Ch.* 787, *Laws of* 1923, *Amending Stock Corporation Law,* § 20) provided that a voluntary sale of franchise and property of a corporation could be had "with the consent of the holders of record of two-thirds of its outstanding shares entitled to vote thereon * * *," and only when notice had been given to every stockholder of record. See *In re O'Hara,* 133 *Misc.* 184, 231 *N.Y.S.* 60.

In *Goodisson v. North American Securities Co.,* 40 *Ohio App.* 85, 178 *N.E.* 29, there is a statement, a dictum perhaps, that the right to dissent or make objection under the merger provisions of the Ohio statute is vested only in stockholders of record.

The right of an unregistered transferee of stock to object to a proposed agreement of merger must be looked for in the statute. Every holder of stock in a Delaware corporation is entitled to have a certificate certifying the number of shares owned by him. *Section* 2047, *Sec.* 15, *Rev. Code* 1935. Shares of stock are deemed personal property and transferable on the books of the corporation in such manner and under such regulations as the by-laws provide. *Section* 2048, *Sec.* 16. The necessity for transfer is indicated; and the stock certificates in evidence disclose that the shares of stock represented by them were made transferable on the books upon the surrender of the certificates properly in-

dorsed. There is no inference to be drawn from the language of the statute or of the certificates that an unregistered transfer of stock is to be accepted by the corporation as a stockholder. Unless otherwise provided in the certificate of incorporation, each stockholder shall at every meeting of the stockholders be entitled to one vote in person or by proxy for each share of stock held by him; and "the board of directors shall have power to close the stock transfer books of the corporation for a period not exceeding fifty days preceding the date of any meeting of stockholders or the date for payment of any dividend or the date for the allotment of rights or the date when any change or conversion or exchange of capital stock shall go into effect or for a period of not exceeding fifty days in connection with obtaining the consent of stockholders for any purpose * * *." *Section* 2049, *Sec.* 17. Amendments to certificates of incorporation are accomplished by submitting them to stockholders "entitled to vote" at a meeting of stockholders called and held upon notice. *Section* 2058, *Sec.* 26. Prior to an election of directors a list of stockholders entitled to vote must be prepared, and the original or duplicate stock ledger is made the only evidence with respect to stockholders entitled to vote or to examine the corporate books. *Section* 2061, *Sec.* 29.

Thus far there is found nothing in the corporation law to support the idea that an unregistered transferee of stock is intended to have the status of a stockholder in intracorporate matters. *Section* 2091, *Sec.* 59, provides for the submission of merger agreements to the stockholders of each constituent corporation at a meeting thereof called separately. In addition to publication of notice of the meeting by newspaper publication, a copy of the notice must be mailed to the last known post office address of each stockholder at least twenty days prior to the meeting, and at the meeting the agreement must be considered and a vote by ballot, in person or by proxy, taken for the adoption or rejection of the agreement. The word "stockholder," as it appears in

§ 2093, *Sec.* 61, undoubtedly has the same significance as in § 2091, *Sec.* 59; and reading the cited sections of the corporation law together the design to include an unregistered transferee of stock within the category of "stockholder" is not found. In a proper case a statute, couched in general language, and not referring to equitable interests, may be held to apply as well to equitable interests as to legal interests, but this is only where the legislative intent is made clear. *Woods v. Spoturno, supra.* There is nothing in the language of the statute that makes clear the legislative intent to bestow the remedy provided upon an equitable owner of stock, but much, indeed, to the contrary. The statute, in essence, provides a means whereby a stockholder unwilling to go along with his fellows may retire from the corporation and receive the fair value of his shares in money as ascertained by a disinterested appraisal. The amount of the award becomes a simple debt due from the resulting corporation to the stockholder, and is expressly made collectible as other debts are by law collectible, that is, by suit at law, judgment at law, and by the usual legal process. The Chancellor's authority to appoint appraisers is administrative in nature. He is given no supervision or control over the appraisers. Their award is not made reviewable by him. His court is not the forum for its collection. The authority may as well have been conferred on a law court, or law judge. For convenience it was conferred on the Chancellor; and there is nothing substantial in the argument that, as the Chancellor was selected as the appointing authority, it was necessarily or probably intended to confer on him the power to deal with equitable interests in stock. Jurisdiction lies in express grant or in necessary intendment.

Considerations of a general nature lead to the same conclusion. Fictionally, a corporation is an entity created by the State. In reality, the State does not create the corporation. Persons associate themselves pursuant to a law, each being entitled to evidence of membership and to certain

rights incident to membership. The right to notice of corporate meetings and proposals, to attend and vote at meetings for the election of directors and on other matters submitted, to inspect the corporate books and records, and to participate in dividends and profits and in the net assets of the corporation on dissolution, are the most material rights incident to stock ownership. Other rights are for the most part incidental. None of these rights which in their totality constitute dominion is exercisable directly by the non-registered transferee of stock. With respect to matters intracorporate affecting the internal economy of the corporation, or involving a change in the relationship which the members bear to the corporation, there must be order and certainty, and a sure source of information, so that the corporation may know who its members are and with whom it must treat, and that the members may know, in a proper case, who their associates are. Especially is this true in a merger proceeding which is essentially an intracorporate affair. The merging corporations are entitled to know who the objecting stockholders are so that the amount of money to be paid to them may be provided. The stockholders in general are entitled to know the dissentients and the extent of the dissent. *Stephenson v. Commonwealth & Southern Corporation,* 18 *Del.Ch.* 91, 156 *A.* 215. The corporation ought not to be involved in possible misunderstandings or clashes of opinion between the nonregistered and registered holder of shares. It may rightfully look to the corporate books as the sole evidence of membership. On the other hand, the non-registered holder of a stock certificate is deprived of no essential right. He has it in his power to record the transfer of his shares and thereby become a member of the corporation in the full legal sense. If, for any reason, he chooses to allow his shares to be registered on the corporate books in the name of another, it is not a denial of his right of actual ownership to require him to establish his rights and pursue his remedy through the nominee of his own selection. Any disadvantage is the result of his own non-

action. To hold that one who does not possess the essential rights incident to stock ownership is, nevertheless, a stockholder as against the corporation, and, as such entitled to interject himself in matters of internal management, is to disregard essential verities and must lead to unnecessary confusion.

We are of opinion that an unregistered holder of stock is not a "stockholder" entitled to intervene in intracorporate matters unless that status is given him expressly or by unavoidable intendment; and, consequently, only the registered holder of stock is a "stockholder" within the sense of the word as used in *Section* 61 of the law, entitled to object to a proposed agreement of merger.

The order appointing appraisers upon the application of the appellees was made without authority; and the cause is remanded to the court below for its revocation. It becomes unnecessary to consider the correctness of the order denying the appellant's motion to amend its answer.

Reversed and remanded.